JOHN H. WINSLOW

*v.*

LEVERETT NEWCOMB.

[Submitted March 13th, 1917. Decided March 27th, 1917.]

1. Covenants for a general community improvement scheme of building restrictions create an equitable servitude enforceable by owners against grantees who took with notice.

2. In a bill for mandatory injunction to remove buildings erected in violation of such restriction—*Held*, that defendant had knowledge of and was bound by such restriction, although not incorporated in his deed.

3. Proceedings to protect such restrictions must in equity be taken before there is a serious expenditure of money, and where complainant daily observed a construction of a building contrary to such restriction begun in September, a bill filed in January is too late.

4. That a number of dwellings out of about two thousand violate such restrictions, that does not evince an abandonment relieving grantees from observance of the restrictions.

5. Where community building restrictions contemplate open porches nearer than twenty feet to street line, overhanging open porches and bay windows extending closer than twenty feet to the street cannot be regarded as infringements.

On pleadings and proofs.

*Mr. S. Webster Hurd* and *Mr. John Boyd Avis,* for the complainant.

*Mr. Lewis Starr,* for the defendant.

BACKES, V. C.

This bill prays for a mandatory injunction to remove buildings erected in violation of a building restriction. In the early sixties, Charles K. Landis, the owner of the "Great Vineland Tract," in Cumberland county, laid out what is now the borough of Vineland, plotted the same into streets and building lots, and adopted a uniform and general building scheme requiring, *inter alia,* all houses to be set back twenty feet from the street line. The lots were conveyed by deeds of general warranty, in which no mention or reference was made to the restriction. Landis had his own peculiar methods. When he sold lots on the installment plan, he entered into what he termed a "Bond of Agreement," with the purchasers, wherein for the stated consideration price, and the purchaser "complying with the covenants hereinafter stipulated," he agreed to sell the described lot, and the purchaser on his part agreed to plant shade trees, erect on the lot a habitation within one year, fence the lot (if at all) with a certain kind, and whitewash or paint it, and keep the sidewalk clear of underbrush and rubbish, "houses to be at least twenty feet from the side of the road," the side of the road to be plowed and seeded within two years. Contemporaneously,

with the delivery of the deed, upon fulfilling the terms of the bond of agreement, or when a sale was not upon deferred payments, Landis exacted a written contract from the grantees, wherein the latter stipulated that the property had been purchased with the understanding, as part of the consideration of said purchase, that they would observe the general improvement scheme, each item of which was repeated substantially in the language of the bond of agreement. The papers are crude and inartificial, but, nevertheless, record unmistakably the community scheme. The documents were kept by Landis and those who succeeded him until the enterprise came to an end, when they were lodged in the archives of the Vineland Historical Society—some one thousand five hundred in all. The borough now contains, approximately, two thousand buildings, chiefly residential, and all except five or six are erected in conformity with the regulation. In two or three instances the invasions were accidental. Compliance with the tree planting and other requirements has added much to the tone of the town. Landis avenue is the main thoroughfare, part of which is devoted to business. The defendant, Newcomb, owns the piece of land at the southwest corner of Landis avenue and Seventh street, on which is, and for years has been, erected a store building, set back from the streets the required distance. The complainant, Winslow, owns the lot facing on Seventh street, immediately adjoining the defendant's in the rear, on which his home is built, and which, like all others on that street, sets back twenty feet. Adjoining his store building, and between it and Seventh street, the defendant, at a cost of $1,500, has erected a one-story glass enclosed building, twelve feet wide, by thirty-eight feet in depth, with a second-story extension in the rear, of the same width and sixteen feet in length, enclosed and windowed, reaching almost the height of the adjacent building. This structure shelters an outside stairway leading to the second floor of the store building, the upper portion of which is used as a landing for the stairway and the lower portion usable for a fruit stand, or like occupation. Eliminating the second-story extension, it is somewhat similar to a stand erected on the opposite corner and one at the corner of Sixth and Landis, the difference being

that this one has a concrete foundation and is more substantial and of a permanent character. On the rear portion of his lot, eleven feet from the complainant's dwelling and within fifteen feet of the street line, the defendant put up an unsightly one-story enclosed shed, twelve feet wide by twenty-six feet in length, completely shutting off the complainant's view to the northward. The restricted area includes the twenty feet from the side of Seventh street, as well as that given space on Landis avenue. *Chelsea Land and Improvement Co.* v. *Adams, 71 N. J. Eq. 771; Henderson* v. *Champion, 83 N. J. Eq. 554.* Both structures are, undoubtedly, infractions of the common scheme and of the covenant entered into by the defendant's predecessor in title, Mrs. Gifford, the original grantee of Landis. Samuel Gifford purchased lots 11 and 12 of block 26 of the easterly district of the town plot of Vineland (defendant's lots), November 3d, 1863, for $200, payable in installments, and executed a "Bond of Agreement" on that day. On May 21st, 1864, Landis conveyed the lots to Hannah M. Gifford, who on that day executed the agreement demanded by him of all purchasers, as already related. It is observed that neither Samuel nor Hannah M. Gifford personally executed the agreements. They were signed "per C. Chester Gifford," the husband of Hannah. What relation Samuel bore to either does not appear, but I assume that the purchase was made in his name for Hannah, her husband acting as agent in the transaction, and that she took the title subject to the burdens entailed by the agreements.

The covenants, in so far as they concern the location of buildings as a part of the community scheme, created an implied equitable servitude on her lots in favor of the other lot owners, binding upon her grantees, direct and remote, who took with notice and enforceable upon the principle of preventing one having knowledge of the just rights of another from defeating such rights. *Brewer* v. *Marshall, 19 N. J. Eq. 537.* As part of a general improvement scheme, such agreements have been repeatedly enforced in this court at the instance of other lot owners. *DeGray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 329,* and the line of authorities citing this case in *Shepard's Annotations.*

The agreement is not a whit less enforceable because the restriction was not incorporated in the deed. The practical utility of embodying it in the conveyance naturally commends itself, but it is not essential if notice is otherwise brought home to the parties sought to be bound. *Kirkpatrick* v. *Peshine, 24 N. J. Eq. 206; Wootton & Dynes* v. *Seltzer, 83 N. J. Eq. 163; affirmed, 84 N. J. Eq. 207.* Nor, as was suggested, rather than argued, was the "Bond of Agreement" necessarily merged in the deed. *13 Cyc. 617.* But that point need not be decided, because the restriction was reiterated in the agreement made contemporaneously with the deed.

The question to be determined then is: Did the defendant purchase with notice, actual or of such circumstances which upon reasonable inquiry would have informed him of the situation? He denied having any knowledge or information whatever of the agreements and, admitting that he made no inquiry, explained that he assumed that section 17 of the act establishing the township of Landis (*P. L. 1864 p. 180*), which provides, among other things, that it shall be within the power of the township committee to make it unlawful "to build any house, barn or other out house nearer than twenty feet of the side of any street or avenue in the town plot of Vineland as recorded in the clerk's office at Bridgeton," was responsible for the rigid adherence to the twenty-foot line by the inhabitants of the borough. His positive denial is not at all satisfactory; nor does his explanation appeal to me as sincere. Nearly fifty years ago, when the town was in its infancy, the defendant moved to Vineland, studied law in the office of Mr. Landis' counsel, was admitted to the bar in 1870, and has practiced his profession there ever since. During that time Mr. Landis, in developing his enterprise, gave great prominence and notoriety to the restrictions, in pamphlet form and local newspapers. It is remarkable, if true, that of the sixteen and more exhibits distributed far and wide by the thousands, shown to the defendant at the hearing, he never, as he said, saw any. It is also inconceivable that he did not gain a knowledge of the agreements while in the office of his preceptor, or that they did not come to his notice at some and ofttimes while he was engaged in active practice and

in intimate and close association with the lot holders of this small and slow-growing community. The defendant is now advanced in years, and it is possible that he has forgotten, but this impairment of memory, if that is the case, did not relieve him from making inquiry, and inquiry of almost any of his fellow-citizens, especially of the older and prominent men of the town who, in their earlier days aided Landis in his promotion, would have readily led to the source of knowledge. The uniformity of the house lines was sufficiently attractive to stimulate a failing memory and to put the defendant on his guard, and he must be held charged with notice of that which reasonable inquiry would have furnished. An examination of the official records of title in the clerk's office, was not a conclusive investigation under the circumstances. Nor can it be contended with any degree of plausibility that the defendant was misled into a conviction of security and confidence, and was thus absolved from further inquiry, by the legislative act above referred to. That statute simply gave the township, out of which the borough of Vineland was later formed, power to regulate, which power was never exercised by the borough; and this to the knowledge of the defendant. The burden of proof that he was a *bona fide* purchaser for value, without notice, and that the mesne holders of the title occupied a like position, is upon the defendant, and this burden he has not sustained. *Murray* v. *Ballou, 1 Johns. Ch. 566; Jones* v. *Thomas, 3 P. Wms. 244; 24 Eng. Reprint 1046; Atlantic City* v. *New Auditorium Pier Co., 67 N. J. Eq. 610.*

While I hold that the terms of the agreements were obligatory upon the defendant, it does not follow that they are to be enforced against him. The work on the concrete foundation of the fruit-stand building was begun in September of 1915, and the superstructure in the early part of November, and completed on the 8th day of January following. The bill in this case was filed January 12th, 1916. During that time the complainant daily observed the progress of the building without interference, and it is now too late to hear his complaint. The rule applied in equity is that to protect restrictive building covenants, legal proceedings must be taken before there has been a serious ex-

penditure of money. *Smith* v. *Spencer, 81 N. J. Eq. 389.* The shed was commenced the day before the bill was filed, and its completion hastened. The complainant acted with promptness, and as to it he is entitled to relief.

Quite a number of dwellings have overhanging open porches, and some have bay windows extending into the prohibited area, which, it is contended, are in violation of the building regulation and relieve the defendant from an observance of the restriction. The few bay windows do not evince an abandonment (*Righter* v. *Winters, 68 N. J. Eq. 252; Morrow* v. *Hasselman, 69 N. J. Eq. 612*), and as, in the formulation of the building scheme, open porches were doubtlessly contemplated, and, inasmuch as the restriction has been thus, almost universally, interpreted and acted upon, they cannot be regarded as infringements. *Ocean City Land Co.* v. *Weber, 83 N. J. Eq. 476; affirmed, 84 N. J. Eq. 505.*

The complainant is entitled to a mandatory injunction in accordance with these views, with costs.