GEORGE H. HEYNIGER

*v.*

ABRAHAM LEVINSOHN.

[Decided May 29th, 1917.]

Where there is a general intention shown on the part of a municipality, and of parties owning land therein, to keep alive and observe building-line restrictions, they will be enforced in a court of equity.

On bill, &c.

*Mr. Henry H. Snedeker* and *Harry R. Cooper,* for the complainant.

*Messrs. Patterson & Rhome* and *Messrs. Durand, Ivins & Carton,* for the defendant.

LEWIS, V. C.

The complainants in these cases ask that a mandatory injunction be granted, compelling the defendant to tear down or remove so much of his building as is erected nearer the line of Tenth avenue than twenty feet. Both actions were heard together.

The borough of Belmar includes all of the property originally owned by the Ocean Beach Association. The property of this association is located south of Shark river and west of the Atlantic ocean. The association laid out the property in building lots, with streets running north and south, and avenues running east and west. The association also caused a map of its property to be made and filed in the office of the Monmouth county clerk. The streets and avenues on the map are the same to-day in Belmar.

The Ocean Beach Association is now out of existence. It was incorporated on March the 13th, 1873. *P. L. 1873 p. 1089.* It

was authorized to purchase and sell lands, and was especially empowered to require any grantee from it to make and maintain such style and character of improvements on the land conveyed, or on the streets fronting thereon, as might seem most expedient for securing a uniform system of development and improvement.

The association, on June the 9th, 1873, passed a resolution as follows:

"*Resolved*, That it is highly important to maintain uniformity in the line of buildings on the main avenues of this Association, and for securing said object that no building be erected on said avenues nearer the line of the same than twenty feet."

The association executed and delivered seven hundred and forty deeds, each of which, with the exception of those about to be referred to, contain this covenant:

"Subject, nevertheless, to the covenants, conditions, and restrictions contained in the aforesaid act, entitled 'An Act to Incorporate Ocean Beach Association'; and the said party of the second part, for himself, his heirs, and assigns, does covenant and agree to and with the said Ocean Beach Association, their successors and assigns, that the said party of the second part, his heirs and assigns, shall not sell, or suffer to be sold, on the said premises hereby conveyed any spirituous or intoxicating liquors, nor violate any of the provisions contained in the said act of incorporation, by laws, rules, or regulations made by the said Association at any time."

The only deeds in which the covenant in the above form do not appear are:

Two to the mayor and council of Belmar for property for public parks;

Three on land not included in the map of the Ocean Beach property;

Two are deeds made in accordance with a decree in chancery; one of the property along the ocean, between Tenth and Eleventh avenues, for bathing purposes, and one a deed by the sheriff, pursuant to a judgment in an action in which the Ocean Beach Association is party defendant;

One in which the covenant was omitted, but a prior deed in the chain of title contained it;

One where the covenant appears, and also an additional covenant in regard to the removal of a building;

One where the word "rules" was omitted; and

Two of property for railroad purposes.

Tenth avenue is one of the principal avenues included in the resolution of the Ocean Beach Association. However, all of the avenues have been construed to be main avenues, and the restriction applies to all of them. The general plan to obtain and compel uniformity in the building line for the benefit of every person to whom the said Ocean Beach Association sold a lot has been maintained. The testimony clearly shows this. It is established that most of the houses were erected with the main body of the building located with reference to the building line. That the restrictive covenant does not apply to open porches, bay windows and eaves, is a construction put upon it by those in authority and the contractors in the borough of Belmar. The late Vice-Chancellor Emery, in *Morrow* v. *Hasselman, 69 N. J. Eq. 612,* held that immaterial violations of the restrictions, not showing an intention to abandon the plan, are no defence to an action. In other words, that slight and immaterial violations of the restrictive covenant would not be considered unless they went to the extent of showing a general abandonment of the restrictions by the owners of the property along the line of the thoroughfare. I do not find from the evidence before me that there has been an abandonment. It is apparent that the original grantor who first imposed the restrictions upon the property has done nothing which would indicate an intention upon its part to disregard the covenant.

The evidence clearly discloses that the defendant knew of the building restriction. The express covenant in his deed in itself would be sufficient to give him notice; and his testimony shows that before he commenced the erection of his building he had full knowledge of the building-line restriction. He says, in one part of his evidence, that he asked the mayor, Mr. Poole, what he thought about his going over the building line in erecting his structure; and, further, if he would stand for it he would put it up in that way. He then claims that he obtained permission from the mayor to do so; but this is expressly denied by Mr.

Poole. And the fact that he (Poole) immediately had a surveyor place stakes on the lot would seem to negative any consent. The defendant was thoroughly informed about the situation before he began operations on his ground. In fact, he states that he knew of the restrictions before he bought the land, and was familiar with the case of *Newbery* v. *Barkalow, 75 N. J. Eq. 128,* in which the late Vice-Chancellor Howell had the same building-line restriction under consideration and upheld the right to enforce it. The testimony of other witnesses also shows the defendant's knowledge of the restriction.

I do not think the complainants have been guilty of laches, for steps seem to have been taken by them to enforce the restriction immediately upon discovery of the violation by the defendant. The defendant proceeded at his peril, in an apparent disregard of all other's rights. He took his chances on the effect of his conduct, with knowledge of the decision in the *Newbery Case.*

It does not appear, although many new buildings that have been erected on Tenth avenue since the *Newbery Case,* that any of them have been located with the main foundation wall projecting beyond the building line. Barring the erection of these new buildings, the conditions remain about the same as at the time the *Newbery Case* was decided. I cannot find that the complainants are estopped by the erection of the Buhler pavilion. The evidence does not appear to disclose that it is located on Tenth avenue; but if it was, and the act of the council in this operated as a bar to the municipality, it could not estop its co-complainants, Wildman and Newman, and the complainant, Heyniger.

There has been shown a general intention on the part of the borough and of the parties owning land along the avenues to keep alive and observe the building-line restriction, and the *Newbery Case* is binding upon me.

The decree therefore will be for the complainant.