Complainants, in 1916, laid out and mapped and plotted for sale for building lots two tracts of land at Bound Brook (called sections 1 and 2), and adopted a scheme of restrictive covenants for the benefit of such lots or tracts. The lots were sold at auction, and the restrictions were advertised in the advertisements of sale, and were also read by the auctioneer at the sale, as a part of the conditions of sale, and were included in the printed conditions of sale signed by each purchaser, reading as follows:
"Buildings. Except upon lots abutting Talmage avenue, no buildings shall be erected within twenty feet of the line of any street or avenue, but upon Talmage avenue buildings may be erected up to the property line. These conditions shall run for a period of twenty years. No hotel, saloon or business for the sale of liquor in any way or manner shall ever be conducted on these premises."
The exception as to Talmage avenue lots is not involved in the present suit, which has reference to the lands in section 2 — Talmage avenue evidently being in the other tract, section 1. There are some sixty-five lots in this tract, of which five front on Vosseler avenue and the others on High street and Second street.
The same restrictions were placed as restrictive covenants in the deeds of conveyance to the purchasers (except in one instance later to be mentioned), together with a further provision that the covenants should enure to, and be enforceable by, the owners of adjoining or neighboring lots, as well as by the grantors (complainants).
There was therefore a general neighborhood scheme for the benefit of the owners of lots on this section 2 tract. DeGray
v. Monmouth Beach, c., Co., 50 N.J. Eq. 329 (at p. 338);Morrow v. Hasselman, 69 N.J. Eq. 612; Sanford v. Keer,80 N.J. Eq. 240. Complainants are suing as quasi-trustees for the benefit of their other grantees. *Page 427 
The suit is against defendant, the present owner of lots 53 and 54 on the tract, to restrain him from building within twenty feet of the line of Second street. He has commenced to build within about two feet of such line. He bought the lots from one Martin Stashak, who bought from complainants at the auction sale. Stashak signed conditions of sale containing the restriction hereinbefore set forth, but by inadvertence the proper restrictive covenant was not incorporated in his deed — there being instead a restrictive covenant applicable to an entirely different tract of complainants. (The deeds were on printed forms, and, obviously, the deed to Stashak was drawn on the wrong form.) The deed from Stashak to defendant recites that it is "subject to the covenants and restrictions" in the deed from complainants to Stashak.
It is not denied that defendant intended and commenced to build within the restricted area. The only defenses set up by the answer or by argument at the final hearing are — (1) that defendant cannot be restrained because there is no covenant in his deed or his predecessor's deed; (2) that there have been numerous prior breaches of the covenants by others, so that the covenants are no longer enforceable in equity, and (3) delay in the attempt to enforce.
That the restrictive covenants are not in the deed to defendant or to defendant's grantor is no defense if defendants had knowledge or notice otherwise. Winslow v. Newcomb, 87 N.J. Eq. 480
(at p. 484), and cases cited; Shoyer v. Mermelstein,93 N.J. Eq. 57. The case of Sjoblom v. Mark, 103 Minn. 193,
relied on by defendant, would be of no weight as against these authorities in our own state; moreover, that decision in nowise contravenes the principles above stated.
The present case is far stronger than either the Shoyer Case
or the Winslow Case, because the present defendant admitted in his testimony that he himself had bought lots on this very tract at the same auction sale, and knew all about the restrictions long before he bought the lot from Stashak. He does not even say that he believed when he bought the lot from Stashak that he could build without regard to the *Page 428 
restriction. On the contrary, it clearly appears that his first idea that he could build within the restricted area was several months after he bought the lot, when (as he says) he was told by the building inspector of Bound Brook that if he built a house he would have to build back twenty feet, but if he built a store he could build up as close as two feet. Accordingly, he commenced to build a store close up to the line.
Assuming that the building inspector did tell him this (there is no corroboration) it, of course, affords no justification for his conduct — no ground to refuse enforcement of the neighborhood scheme. It may well be that defendant (who is a foreigner) was misled by the borough official and his own ignorance — that he acted in good faith — but his mistake is in nowise chargeable to complainants or to any of the neighboring lot owners.
As to the second defense — defendant has failed to prove it. I am satisfied that there has not been a single violation of the twenty feet building line restriction, or any other of the restrictions on the tract. It may be noted here that defendant's counsel seems (from the pleadings and proofs) to have had the idea that the erection or maintenance of a store on the tract in question was a violation of the covenant. There is no such restriction in the scheme, the only business prohibited is the sale of liquor. The fact that some houses are back more than twenty feet is, of course, not a violation.
The third defense also fails. The cases in which delay in bringing suit has been held to bar complainants' right to relief fall into two classes — (1) where the delay amounts to, or is evidence of, acquiescence; (2) where the delay, coupled with the other circumstances, erects an estoppel.
In the present case there is, of course, no question of delay amounting to acquiescence. Defendant commenced his building in the early part of April. Several of his neighbors protested as soon as they saw the cellar being dug in the restricted area. The time of these protests is fixed as on Saturday and Sunday, which would be April 5th and 6th. Mr. Beekman, complainants' attorney, says he noticed the cellar *Page 429 
being dug in the early part of April, and he served notice on defendant, warning him not to proceed with violation of the restrictions or suit would be brought. Defendant says he got this notice "a day or two after I started work." Obviously, there was no unreasonable delay on the protest and notice.
Complainants' bill was filed just one week later, April 15th, with affidavits, and an order to show cause, with interim
restraint, was made on that day. Copies of the bill, affidavits and order to show cause were served on defendant on the same day. It is difficult to see how more speedy action could be asked, reasonably. Complainants, reasonably, could not be required to proceed with suit before ascertaining if defendant intended to proceed in defiance of the notice. It must not be forgotten that the defendant was the wrongdoer (even if he were not acting in bad faith), and that unreasonably stringent requirements as to celerity in bringing suit are not to be imposed on complainants who are innocent and injured parties, no matter how much money defendant may spend in the interim after notice and warning. I find no negligence or improper delay by complainants, and, hence, no estoppel. A similar decision may be found in Heyniger v.Levinsohn, 87 N.J. Eq. 471; affirmed, 88 N.J. Eq. 341, where the interim between knowledge of violation and notice was four or six days, and bill filed five days after notice served.
Complainants are entitled to decree for enforcement, with costs. *Page 430