(99 App. Div. 576)

In re BOARD OF PUBLIC IMPROVEMENTS OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. EMINENT DOMAIN—DAMAGES.

In ascertaining damages for the taking of private property for public use the commissioners of estimate must consider whether damages resulted to the residue of the property, consequent on the use of the land actually taken.

2. SAME—REPORT OF COMMISSIONERS—DOUBT AS TO RULE FOLLOWED—PRACTICE.

The statement in the minutes of the commissioners of estimate appointed to ascertain the damages for lands taken by a city to bear a bridge pier that they "considered the whole estate, and have reached the conclusion as to the loss and damage sustained by determining the value of the whole and the value of the remainders after the taking, the difference between them being the loss and damage sustained; in other words, the result arrived at by us comprehended not only our deliberate judgment of the value of the premises taken, but also the consequential damages caused by the taking"—renders doubtful whether the commissioners took into consideration as consequential damages all of the elements required by law, and no more; and hence the proceeding will be remitted to them to state the grounds of their decision.

Hirschberg, P. J., dissenting.

Appeal from Special Term, Queens County.

In the matter of the application of the board of public improvements of the city of New York relative to acquiring title to lands for the construction of a bridge. From an order confirming the report of the commissioners of estimate, certain property owners appeal. Remitted to the commissioners to state the grounds of their decision.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Walter B. Hopping, for appellant Lavinia A. Burden.

Duane P. Cobb, for appellant Robert Ellis.

James D. Bell (Richard B. Greenwood, on the brief), for respondent.

JENKS, J. This is an appeal by property owners from an order confirming the report of commissioners of estimate appointed to

ascertain the damages for lands taken to bear a pier of a bridge crossing the East river from the borough of Manhattan to the borough of Queens. This report should not be disturbed unless it clearly appears that the commissioners have done injustice by proceeding upon an erroneous principle. It is contended that the commissioners thus radically erred in that they did not consider whether damages resulted to the residue of the property consequent upon the use of the land actually taken. That this is the rule is now established by the judgment in South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366. Some of the witnesses called by the property owners testified to this element of damage. The testimony was received under the objection of the learned counsel for the city. On one occasion—not the first—the chairman stated:

"On that question we have already reserved our decision, it being the one raised by the statement made by the counsel at the beginning of the session. Exception for Mr. Malone (the assistant corporation counsel). Q. Answer the question. A. $14,250. Q. What, in your opinion, would be the amount, in dollars and cents, of the damage done to the property under consideration by reason of the construction of the proposed bridge, piers, and approaches, and by reason of the structure itself? Mr. Malone: Objected to upon the same grounds. The Chairman: I would like to have the question amended. We will rule the same way. As to the form of the question, I think you had better change it to what would be the damage resulting to the whole property owned by the estate of Samuel Burden; not the property affected by this proceeding. Mr. Gillon: I think that was the purport of this question. Mr. Embree: The property I refer to is the property belonging to the estate of Samuel Buoden. The Chairman: The entire property belonging to the estate of Samuel Burden, deceased. Mr. Malone: I object upon the further ground that it is assuming something that is not in the record. There is nothing here as to what the proposed plans are upon which the commission can in any way pass. The Chairman: We will rule on that the same way, reserving our decision. Exception for Mr. Malone."

I fail to find in the voluminous record that a specific decision upon this point was ever made, or that the evidence was ever excluded. It stands as received under the objection of the corporation counsel. Turning to the beginning of the proceedings, it seems quite evident from the colloquy between the chairman of the commission and the counsel that the commission determined to receive such evidence. The expert for the city testified that there was no such damage in these cases. The commission made a preliminary report, to which the objections taken specifically raised the legal point now pressed here. At the time of the presentation of the objections, the various counsel were heard orally, and their arguments in extenso are on the record. Mr. Hopping, of counsel for Lavinia A. Burden, cited to the commission Newman v. Metropolitan Elevated Ry. Co., 118 N. Y. 618, 23 N. E. 901, 7 L. R. A. 289, which is one of the authorities cited in South Buffalo Ry. Co. v. Kirkover, by Bartlett, J., who made an excerpt therefrom. The hearing was in March and April, 1903. Kirkover's case, supra, was not decided until October 30, 1903, and the judgment of the Appellate Division in 86 App. Div. 55, 83 N. Y. Supp. 613, in that case affirmed, was not given until July, 1903. In a sense, the case was one of original impression, as is evident from the language of Bartlett, J., namely:

"It has been frequently pointed out in judicial opinions that there has been great conflict of authority in this state as to which of the rules above stated was best calculated to do justice between the parties. \* \* \* It may be true, as stated by appellant's counsel, that the precise question now presented has never been passed upon by this court. It is, however, equally true that the decisions in the Supreme Court and in this court tend strongly to the recognition of the more liberal rule. Considering the principle involved. unembarrassed by legal decisions," etc.

The commissioners made no change in their award. The contention that they did not consider this element of damage is based upon two grounds: First. On the inference to be drawn from the amount of the awards. I do not attach much, if any, importance to this argument, for the reason that the commissioners were at liberty to credit the testimony of the witness who testified that there was no such damage in this case; and, second, because they viewed the property, and were not confined to the testimony of the witnesses. The second ground is that the contention is substantiated by the minutes of the commission, explanatory of their action, made after the arguments on the objections. The minute, in its essential part, reads:

"Present: Messrs. Meagher, Perry and Kent. Examined objections of city and claimants. Discussed same, and decided to make no change in award. Because of the great disparity between the property owners and the city, the commissioners have exercised great care before reaching a conclusion as to the loss and damage which the owners have sustained. \* \* \* Where there has been left in the ownerships of the claimants affected by the improvement lands not actually taken, the commissioners have considered the whole estate, and have reached their conclusion as to the loss and damage sustained by determining the value of the whole. and the value of the remainders after the taking, the difference between them being the loss and damage sustained; in other words, the result arrived at by us comprehended not only our deliberate judgment of the value of the premises taken, but also the consequential damages caused by the taking. To the objections filed by all parties and the voluminous briefs and arguments made by the attorneys of the respective claimants we have given our undivided attention and deliberation."

If the evidence had been received without cavil or doubt, I should have perhaps less hesitation in recommending the affirmance of the order. The minutes are susceptible of construction that the commissioners observed the correct rule, and I do not express or entertain the opinion that they did not in fact consider all the elements of damage. The commissioners say: "In other words, the result arrived at by us comprehended not only our deliberate judgment of the value of the premises taken, but also the consequential damages caused by the taking." Considering this statement alone, what do the commissioners mean by the term "consequential damages"? Consequential damages are defined to be those which the cause in question naturally, but indirectly, produces. Anderson Law Dict., citing 1 Sutherland on Damages, 19, 20; Eaton v. B. C. & M. R. R., 51 N. H. 513, 12 Am. Rep. 147. "Those which, though directly, are not immediately, consequential upon the act or default complained of." Bouvier. Mr. Sedgwick, in his book on Damages, says that the term is misused, and insists that the taking is not merely the diminution of the property by the value of the part taken, but the taking affects the residue, the part not taken; that

it is a direct consequence; and that the proper use of the term "consequential damages" is limited to any damages which would arise from the operation of the railroad, canal, etc. Section 1109. In other words, that the term "consequential damages" is strictly applicable to the damages which are caused to the property not taken by the use of the land taken. If this be both logical and conceded, then I could imply that the commissioners state that they did consider the element in question. But the term is frequently used to refer to the damages inflicted upon the residue by the mere taking itself. I need now cite but a single instance, one at hand, inasmuch as it is a quotation made by Bartlett, J., in Kirkover's Case, supra, now the leading authority. That learned judge quotes from an opinion of Peckham, J., in Bohm v. Metropolitan Elevated Ry. Co., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344:

"Then as to the land remaining the question has to some extent been mooted whether the company should pay for the injury caused to such land by the mere taking of the property, or whether, in case the proposed use of the property taken should depreciate the value of that which was not taken, such proposed use could be regarded, and the depreciation arising therefrom be awarded *as a part of consequential damages* suffered from the taking I think the latter is the true rule." (The italics are mine.)

When the term is thus used by so eminent a judge, in which use he is not singular, it cannot be concluded that by the term "consequential damages" the commissioners necessarily and only refer to the use of the property taken in its effect upon the residue. Further, if we read the entire paragraph of the minutes, it runs:

. "The commissioners have considered the whole estate, and have reached their conclusion as to the loss and damage sustained by determining the value of the whole, and the value of the remainders after the taking, the difference between them being the loss and damage sustained; in other words, the result arrived at by us comprehended not only our deliberate judgment of the value of the premises taken, but also the consequential damages caused by the taking."

Any doubt may be dissipated by a rule of practice. The report may be sent back to the commissioners to state the grounds of their decision in order that it may clearly appear whether, in making their estimates, they took into consideration as consequential damages all of the elements required by law, including that specifically discussed and approved in South Buffalo Ry. Co. v. Kirkover, supra; nothing more. See Matter of Board of Water Commissioners of White Plains, 55 App. Div. 77, 66 N. Y. Supp. 1005.

The proceeding should be remitted to the commissioners for action in accord with this opinion. All concur, except HIRSCH-BERG, P. J., who votes for affirmance, and HOOKER, J., taking no part.