MICHAEL W. FLYNN, Respondent, *v.* NEW YORK, WEST-
CHESTER AND BOSTON RAILWAY COMPANY, Appellant,
Impleaded with Others.

EDWIN B. BRADY, Respondent, *v.* NEW YORK, WEST-
CHESTER AND BOSTON RAILWAY COMPANY, Appellant,
Impleaded with Another.

Real property — eminent domain — restrictive building cove-·
nants — railroad company may buy land within restricted terri-
tory and build and operate railroad thereon in spite of restrictive
covenants, but must pay adjacent owners within restricted terri-
tory the damages to their property caused by the construction
and operation of the railroad.

1. Restrictive building covenants are recognized as valid and
enforceable in law and equity, and lots, laid out for residence pur-
poses and covered by restrictive covenants, are subject to an
incumbrance requiring occupation in accordance with the plan,
which is binding upon each subsequent purchaser having notice
thereof. But a public service corporation exercising the right of
eminent domain has the advantage over the private person or cor-
poration in that it cannot be kept off the premises entirely, but
may enter the restricted district and destroy its exclusive character
upon making just compensation for property rights thus taken.

2. An owner of land laid it out into building lots which were
sold and conveyed subject to numerous covenants, binding upon
the grantees, among which was the following: "No building or
structure for any business purpose whatsoever shall be erected
on said premises." Thereafter the defendant, a railroad com-
pany, purchased lots running across a part of the tract, sub-
ject to the restrictions, and built a railroad across such lots which
is equipped and operated as a high-speed electric railroad, oper-
ating many trains daily, and thereby rendering the adjacent prop-
erty less valuable than it would have been if defendant's lots
were used exclusively for private dwelling purposes. The plain-
tiffs, who own lots subject to the same restrictions adjacent to
defendant's railroad, instituted these actions to restrain the defend-
ant from constructing and operating the railroad upon its lots, but
at the time of the trial the railroad was in operation. *Held*, that
although the defendant cannot be prevented and restrained from
constructing and operating its railroad across the lots it has no right

to take private property without just compensation (Const. N. Y. art. 1, § 6), and having violated the restrictive agreement by constructing and operating its railroad, the plaintiffs are entitled to damages measured by the depreciation which their lands sustain, including such depreciation as will be sustained by reason of the use to which the railroad puts its property, that is, the difference in value between their land with and without the railroad in operation.

*Flynn* v. *N. Y., W. & B. Ry. Co.*, 160 App. Div. 907, affirmed.

*Brady* v. *N. Y., W. & B. Ry. Co.*, 160 App. Div. 906, affirmed.

(Argued April 20, 1916; decided May 2, 1916.)

APPEAL in each of the above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 31, 1914, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the actions and the facts, so far as material are stated in the opinion.

*Louis Marshall* and *George S. Graham* for appellant. The covenants on which respondent relies as the foundation of his claim against appellant, if they be construed as intended to prohibit the construction and operation of a railroad, are to that extent against public policy and void. (Leake on Uses and Profits of Land, 187, 188; *Wharton* v. *United States*, 153 Fed. Rep. 876; Pomeroy on Eq. Rem. § 270; 1 Reeves on Real Prop. 190, § 152; *De Gray* v. *Monmouth Beach Co.*, 50 N. J. Eq. 329; *Korn* v. *Campbell*, 192 N. Y. 490; Elliott on Railroads, § 950; *Transportation Co.* v. *Pipe Line Co.*, 22 W. Va. 600; *Beasley* v. *Texas & P. R. R. Co.*, 191 U. S. 492; *Morris & Essex R. Co.* v. *Hoboken & M. R. Co.*, 59 Atl. Rep. 332; *Kettle River R. Co.* v. *Eastern R. Co.*, 41 Minn. 461; *Calor Oil & Gas Co.* v. *Franzell*, 128 Ky. 715; Nichols on Em. Dom. 189; *Leggett* v. *City of Detroit*, 137 Mich. 247; *St. Joseph & B. C. R. Co.* v. *Ryan*, 11 Kans. 602.) The restrictive covenants in so far as they prohibit the construction and operation of a railroad do not extend further than to prevent injury to the plaintiff's

easements of light, air and access. (*American Bank Note Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 252; *Bischoff* v. *N. Y. El. R. R. Co.*, 138 N. Y. 257; *Matter of Brooklyn Union Elev. R. R. Co.*, 113 App. Div. 817; 188 N. Y. 553.) The covenants do not either expressly or by necessary implication prohibit the construction or operation of a railroad. (*Hurley* v. *Brown*, 44 App. Div. 480; *Clark* v. *Jammes*, 87 Hun, 217; *Kitching* v. *Brown*, 180 N. Y. 414; *Sonn* v. *Heilberg*, 38 App. Div. 515; *White* v. *Cullins*, 82 App. Div. 1; *St. Andrew's Lutheran Church's Appeal*, 67 Penn. St. 512; *Rogers* v. *Danforth*, 9 N. J. Eq. 289; *Atlantic Dock Co.* v. *Libbey*, 45 N. Y. 499; *Emigrant Industrial Sav. Bank* v. *Roche*, 93 N. Y. 374; *Holmes* v. *Howard*, 60 N. Y. 183.) The damages were awarded upon an improper basis. (*Rouse* v. *C. & N. Y. S. Co.*, 59 Hun, 80; *Regina* v. *N. C. Nav. Co.*, 40 L. J. M. C. 197; *Truesdale* v. *Gay*, 13 Gray, 311; *Nowell* v. *Boston Academy*, 130 Mass. 209; *People* v. *Richards*, 108 N. Y. 137.)

*Edwin L. Kalish* and *Charles A. Kalish* for respondents. The building plan and the covenants restricting the use of the Prince tract to private residences, although prohibiting the construction of a railroad thereon, are not against public policy and are valid. They constituted property rights in favor of the respondent, which may not be disregarded and may not be extinguished without due course of law and without just compensation. (*Trustees* v. *Thacher*, 87 N. Y. 311; *Cowell* v. *Springs Co.*, 100 U. S. 55; *City of Oswego* v. *Oswego Canal Co.*, 6 N. Y. 265; *Riggs* v. *Pursell*, 66 N. Y. 203; *Matter of R. T. Ry. Comrs.*, 197 N. Y. 81; *Allen* v. *City of Detroit*, 167 Mich. 464; *Kirby* v. *School Board*, L. R. [1 Ch. 1896] 437; *Ladd* v. *City of Boston*, 151 Mass. 585; *Whitney* v. *R. R. Co.*, 77 Mass. 359; *Hays* v. *Waverly R. R. Co.*, 51 N. J. Eq. 345; *Bridgewater* v. *O. C. Ry. Co.*, 62 N. J. Eq. 276; 63

N. J. Eq. 798.)   The construction and operation of the
railroad violated the Prince plan of improvement and the
restrictive covenants.   (*Giant Powder Co.* v. *Oregon R.
Co.*, 42 Fed. Rep. 470; *New York, etc., R. Co.* v. *New
Haven*, 70 Conn. 390; *Nash* v. *Com.*, 174 Mass. 335;
*Forbes* v. *Williamette Falls Elec. Co.*, 19 Ore. 61;
*Muench* v. *R. & M. Con. Co.*, 155 App. Div. 409;
*Armenti* v. *Brooklyn U. G. Co.*, 157 App. Div. 276;
*Livingston* v. *Tenbroeck*, 16 Johns. 14; *Swazey* v.
*County of Shasta*, 141 Cal. 392; *Wright* v. *Evans*, 2
Abb. Pr. [N. S.] 313; *Mecca Realty Co.* v. *Kellogg*, 85
Misc. Rep. 598; *Benedict* v. *Ocean Ins. Co.*, 31 N. Y.
398.)   The court properly determined the compensation
equitable for the destruction of the easements.   (*Bohm*
v. *M. E. R. Co.*, 129 N. Y. 576; *Henderson* v. *N. Y. C.
R. R. Co.*, 78 N. Y. 423; *Newman* v. *M. E. R. Co.*, 118
N. Y. 618; *South Buffalo R. Co.* v. *Kirkover*, 176 N. Y.
301; *Buffalo* v. *Pratt*, 131 N. Y. 299; *United States* v.
*Welch*, 217 U. S. 336; *Matter of R. T. R. Co.*, 128
App. Div. 114; 197 N. Y. 81; *Sperb* v. *Met. El. R. R.
Co.*, 137 N. Y. 155; *Rasch* v. *Nassau E. R. R. Co.*, 198
N. Y. 385.)

POUND, J.   In 1906 one Prince owned a tract of land
in the city of New Rochelle, Westchester county, which
he laid out on a map in one hundred and fourteen lots
fronting on streets.   As an inducement to prospective
purchasers and in pursuance of a plan to restrict the lots
against nuisances and trades and make it exclusively a
residence district, all of the lots thus laid out were sold and
conveyed by deeds containing the following covenants:
" And the said party of the second part does covenant
and agree that the grant and conveyance as aforesaid
shall be subject to the following covenants, conditions
and restrictions, which shall be binding upon them, their
heirs, executors, legal representatives and grantees of the
respective parties.

"'That the said party of the second part shall not build or permit to be built on said premises any house or dwelling of a value less than $4,500 or being less than two and one-half stories in height, or of the style known as 'flat roof.'

"No part of said premises shall be used for any Hospital, Insane, Inebriate or other Asylum, public or private, or cemetery or place of burial.

"*No building or structure for any business purpose whatsoever shall be erected on said premises.*

"No part of any structure erected shall be within fifteen feet of any street or street line upon which the lot or lots abut, except the steps, which may project a reasonable distance beyond the structure.

"No dwelling shall be erected on any plot less than two lots.

"No part of any barn, stable or other structure or structures of any kind or description erected upon said premises shall be within sixty feet of the line of the street or avenue on which the lots front, or within twenty-five feet of any side street; nor shall there be erected on any part of said lot any slaughterhouse, smith shop, forge, furnace, steam engine, brass foundry, nail, iron or other foundry, or any manufactory of gunpowder, glue, varnish, vitriol, ink, turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any manufactory whatever; or any ale house, brewery, distillery, saloon, liquor store, hotel or inn, or livery stable, or any other obnoxious, dangerous or offensive business or trade or any building of the character or description known as a tenement house. There shall be no toilet outhouse of any kind or description upon the premises. No closed fence shall be erected on said premises, excepting on the rear line thereof, and that no fence shall be erected on said premises more than four feet high, excepting on the rear line thereof.

"No poultry shall be kept upon any part of the premises

unless such poultry is retained or inclosed in proper runs or inclosures.

"It being understood and agreed that said covenants and conditions shall run with the land, and shall be enforceable both as covenants and conditions, with the right of re-entry in case of breach thereof."

Appellant purchased from Prince's grantees lots numbered from 1 to 38 inclusive, running across the entire southern part of the tract, subject to the above restrictions. Respondent Flynn purchased lots 107 and 108, on which he has erected a house directly across the street from appellant, and the respondent Brady purchased lots 39–42 inclusive, immediately adjacent to appellant's premises. The railway of appellant was built across the restricted lands owned by it, partly on an embankment 25 feet above the surface, which is next to the Brady lots, and partly in an open cut, 17 feet in depth, which is in front of the Flynn property. The railroad is equipped as high speed electric, operating many trains daily, and its maintenance and operation render respondents' property less valuable than it would be if appellant's property were used exclusively for private dwelling purposes.

These actions were instituted to restrain the appellant from constructing and operating its road across said lots, but at the time of the trial the railroad was in operation. The judgments appealed from restrain the maintenance by the appellant of its erections and structures upon the restricted land owned by it and the operation of its road, unless appellant pays Flynn $3,370 and Brady $2,000 respectively, as damages by reason of its violation of the restrictive covenants.

Appellant contends (1) that the restrictive covenants upon which respondents rely are, so far as they prohibit the construction and operation of a railroad, against public policy and void, and (2) that they do not by the language used prohibit the construction or operation of a railroad.

10

The constitutional provision "nor shall private property be taken for public use without just compensation" (Const. N. Y. art. 1, § 6), brings us at once to the inquiry as to whether the rights of respondents based on such restrictive covenants are property rights, for no public policy can exist which is contrary to the fundamental law. Restrictive building covenants have been consistently recognized as valid and enforceable in law and in equity, and it has been held that all the lots covered thereby are subject to an incumbrance requiring occupation in accordance with the plan, which is binding upon each subsequent purchaser having notice of the plan, even though his legal title is unrestricted. (*Tallmadge* v. *East River Bank,* 26 N. Y. 105; *Korn* v. *Campbell,* 192 N. Y. 490–495.) The public service corporation, exercising the right of eminent domain, has the advantage over the private person or corporation in that it cannot be kept off the premises entirely, but may enter the restricted district and destroy its exclusive character upon making just compensation for property rights thus taken. It is said in *Trustees of Columbia College* v. *Lynch* (70 N. Y. 440, 446) that building restrictions "have never been regarded as impolitic." It follows that they cannot be taken and destroyed without just compensation. The distinction suggested in *U. S.* v. *Certain Lands* (112 Fed. Rep. 622; affd. *sub nom. Wharton* v. *U. S.,* 153 Fed. Rep. 876) between acts done by private individuals for their own benefit and working injurious consequences, and acts, perhaps equally injurious, done for a public purpose in the execution of a public duty, amounts only to this; — for the private use, rights thus created cannot be lawfully taken; for the public use, they may be taken, but only for just compensation. (*Wallace* v. *Clifton Land Co.,* [Ohio] 110 N. E. Rep. 940.) These restrictive covenants create a property right and make direct and compensational the damages which otherwise would be consequential and non-compensational. (*Radcliff's Exrs.*

*v. Mayor, etc., of Brooklyn,* 4 N. Y. 195; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 N. Y. 98.) No matter how unpleasant a neighbor the railroad may prove, if it takes no property by physical appropriation it is not chargeable with damages for impaired values due only to proximity. But something in the nature of an easement of privacy over another's land may be acquired by covenant in order that one may live apart from the disagreeable sights and sounds of business if one desires, and if that right has a value and the railroad subtracts a portion thereof by building on the restricted land, it is difficult to conceive why compensation should not follow. (*Story* v. *N. Y. El. R. R. Co.,* 90 N. Y. 122.)

The appellant has violated the restrictive agreement by "erecting a building or other structure for business purposes." A building or a structure is, in the widest sense, anything constructed, *i. e.*, erected by art and fixed upon or in the soil, composed of different pieces connected together and designed for permanent use in the position in which it is so fixed. To erect means not only to raise but also to build or construct. (Century Dictionary.) "A thing constructed" may thus be the equivalent in meaning of "a building erected." We are not now dealing with a penal statute where formal niceties of meaning are invoked in behalf of personal liberty. (*People* v. *Richards,* 108 N. Y. 137.) To say that the construction of the railroad, whether above, on or below the surface of the ground, is not within the inhibition of the restrictive covenants is to say that it is enough to keep the word of promise to the ear and that the surrounding circumstances must not be allowed to aid in ascertaining the fair expressed intent of parties to a contract.

The right of the property owner is measured by the depreciation in value which his land sustains, including such depreciation as will be sustained by reason of the use to which the railroad puts its property, the difference in value between his land with and without the railroad

in operation.   (*South Buffalo Ry. Co.* v. *Kirkover,* 176 N. Y. 301.)   The railroad and its use in violation of the restrictive covenants may not be separated in considering the effect upon the owner.   The rule for assessing damages applied herein seems to have been correct and the amount of the award presents no question of law.

The judgments should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and CARDOZO, JJ., concur.

Judgments affirmed.