Per CuriaM :
This case was remanded to this court by the Supreme Court, 241 U. S., 119. Upon its return here the defendants asked leave to take proof, and leave was granted to both parties to take such additional testimony as they desired. Several continuances were thereafter granted by the court upon the application of the parties to enable them to complete the preparation of the case for hearing.
The case as originally heard by the court was submitted upon the evidence adduced by the plaintiffs. The defendants adduced no proof upon the material questions. The result now is that an entirely new case has been presented by the evidence; the record of the additional testimony and exhibits is much larger than the original record was.
There is no doubt that the officers and agents of the United States entered upon the lands of the plaintiffs and took 31.4 acres of land, upon which they constructed the dike mentioned in the findings, part of the land so taken being used for borrow pits. Nor is there any doubt that the plaintiffs objected to the taking of their lands. They likewise objected and protested against the building of said dike in 1903-4 and its extension in 1907.
The dike was built to prevent what is called a “ cut-off,” which the evidence shows was imminent. The fact is that during the year before the construction of the dike there had been washouts on the narrow neck of land which, commencing at the lowest side thereof, extended nearly halfway across the same. The evidence of persons and engineers familiar with the conditions and the action of the river is to the effect that the cut-off would have occurred at the next flood following the year 1903. The cut-off would have a material effect upon the regimen of the river, and the dike was propected and built in the interest of improving the navigation of the river.
Nor can there be any doubt under the evidence in the case that if a cut-off had taken place it would have made an island of Point Chicot. The lands of the plaintiffs would thus have been on the left bank of the river and would have been continuously subject to its eroding influences. The *416 local situation was such that plaintiffs’ land would have furnished the concave bank of the river and would have received the full force of the water. The dike arrested the imminent cut-off and its principal benefit was that it kept the main channel of the river around Point Chicot, a distance of about 14 miles, instead of allowing it to cut across the neck, a distance of less than a mile. The checking of the flood waters by the dike, and their deflection along its course until they escaped around and beyond the end of the dike, caused a precipitation of sand and gravel on plaintiffs’ land, a scouring of the soil therefrom, and the washing of a number of deep holes at places. The land so affected may be generally described as that part of the land lying between the dike and the river and between the western line of plaintiffs’ land and a point several hundred feet east of the end of the dike, and therefore constituted a comparatively small part of Point Chicot. The damage thus occasioned was not the result of one flood, but of recurring floods, and by 1909, when suit was brought, that part of the land had become practically worthless for any agricultural purpose. The remainder of plaintiffs’ land was not damaged by reason of the dike. The evidence shows that as late as 1910 and 1911 several hundred acres of land on Point Chicot were being cultivated.
Year by year, as the floods have come, sand has been deposited upon these lands, and their agricultural value has diminished. The cause of this damage is the increased heights of the flood levels, brought about by the general system adopted by the Mississippi River Commission for the improvement of the navigation of said river. The condition at Point Chicot is similar to the condition at other points similarly situated, and that general condition is that such points, being “ outside ” of the levees — that is to say, between the levees — have been given over as practically worthless for agricultural purposes. The overflows do not injuriously affect timber growth, and on these different points, as well as upon Point Chicot, valuable timber grows.
We think that the plaintiff is entitled to recover for the 31.4 acres actually taken and appropriated by the Government. Great Falls Mfg. Co. Case, 124 U. S., 581.
*417 As to the injury to the lands caused by the heightening of the flood levels, as above stated, we think there can be no recovery under the principles announced by the Supreme Court in the Jackson Case, 230 U. S., 1; Hughes Case, 230 U. S., 24; and Cubbins v. Mississippi River Commission, 241 U. S., 351.
It is apparent that the damage to the land lying between the dike and the river was primarily caused by the flood waters, but the presence of the dike contributed to the immediate injury. The Government having taken part of plaintiffs’ land, and the structure erected thereon having contributed to the damage of another part of the land, we have concluded to give judgment for that damage under the influence of the Grizzard Case, 219 U. S., 180.
We have some doubt as to our conclusion upon this latter point growing out of the fact that the damage was caused by the action of the dike upon the flood waters, as stated in the findings. If the facts present a case sounding in tort this court is without jurisdiction upon that feature of the case. Sec. 145, Judicial Code. Because it appears that the construction and maintenance of the dike contributed to the immediate injury or damage to said land we have given a judgment for the value of the 31.4 acres of land appropriated by the Government and for the damage done to the portion of the land mentioned in Finding XI, together amounting to $2,450.