TOWN OF FALLSBURGH, SULLIVAN COUNTY, NEW YORK, Acting for and in Behalf of the SOUTH FALLSBURGH SEWER DISTRICT, Respondent, *v.* LOUIS SILVERMAN and ANNIE SILVERMAN, His Wife, and LENA SHER, Appellants, Impleaded with CHARLES WOLPIN and Others, Defendants.

Third Department, November 13, 1940.

*Isaac Silberman* [*John Bright* of counsel], for the appellants.

*Milton E. Glickman, S. Wallace Kagan* and *Harry C. Resnick* [*William G. Birmingham* of counsel], for the respondent.

BLISS, J.   Subdivision (a) of section 7 of article 1 of the New York State Constitution provides " private property shall not be taken for public use without just compensation."   The Fifth Amendment to the Federal Constitution similarly states that private property shall not be taken for public use without " just compensation."

Where a portion of a parcel of real estate is taken by condemnation for the public use the owner is entitled not only to the value of the portion thus taken, but also to the consequential damages to the remainder including the results of the use to which the portion taken is to be put. (*South Buffalo Railway Co.* v. *Kirkover,* 176 N. Y. 301.) This rule has been approved by our court of last resort in numerous instances. "The right of the property owner is measured by the depreciation in value which his land sustains, including such depreciation as will be sustained by reason of the use to which the railroad put its property, the difference in value between his land with and without the railroad in operation." (*Flynn* v. *N. Y., W. & B. R. Co.,* 218 N. Y. 140.) "Where land is acquired for public use without the consent of the owner, he is entitled to recover the market value of the premises actually taken and also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by those acquiring it." (*County of Erie* v. *Fridenberg,* 221 N. Y. 389.) "Just compensation is reasonable and adequate compensation and the equivalent for the actual loss that the owner sustains by reason of the public taking his private property. The rights of the parties in this case are not controlled by the rule relating to the rights of adjoining owners in the legitimate use of their respective properties." (*County of Erie* v. *Fridenberg, supra.*) "The Constitution (Art. I, § 6) prohibits the taking of private property for public use without just compensation. Just compensation has been measured in cases of this kind by the fair market value of the property taken as of the date of taking. (Orgel on Valuation under the Law of Eminent Domain, § 16; *Matter of Van Etten* v. *City of New York,* 226 N. Y. 483, 489; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106, 123.) It includes the market value of the premises actually taken and also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by those acquiring it." (*Matter of Board of Water Supply of New York,* 277 N. Y. 452, 456.)

This is also the Federal rule. "If the remaining land had been part of the same tract which the government seeks to condemn, then the damage to the remaining portion of the tract taken, arising from the probable use thereof by the government, would be a proper subject of award in these condemnation proceedings." (*Sharp* v. *United States,* 191 U. S. 354.)

"Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated,

but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." (*United States* v. *Grizzard,* 219 U. S. 180.)

The *Kirkover* and *Flynn* cases involved the construction and operation of a railroad on the preempted lands, the *County of Erie* case, a condemnation for public highway, and the *Van Etten* and *Board of Water Supply* cases, a public water supply system. The *Sharp* case was a taking for military fortifications while *United States* v. *Grizzard* involved the condemnation of lands for navigation improvements. Other cases which cite with approval or apply the rule that the owner of the remainder of a parcel is entitled to the consequential damage to that remainder caused by the use to which the part appropriated is to be devoted are *Archer* v. *United States* (53 Ct. Cl. 405; affd., 251 U. S. 548), involving an appropriation for the construction of a levee; *Adirondack Power & Light Corp.* v. *Evans* (226 App. Div. 490), where an easement was acquired for a power transmission line; *Matter of City of Rochester* (234 App. Div. 583), an appropriation of lands for approaches to a bridge; *Matter of Board of Public Improvements* (99 App. Div. 576), a taking for bridge pier purposes, and *Matter of Jaquino Realty Corp.* v. *Ormond* (217 App. Div. 76; affd., 247 N. Y. 528), in which the location of a board walk was held to be an element of consequential damage. In *Haggard* v. *Independent School Dist.* (113 Iowa, 486; 85 N. W. 777) it was held that the inconvenience due to the proximity of a school house was properly taken into consideration in estimating the damage suffered by the owner as affecting the market value of the remaining tract. The erection of an embankment on the lands taken is an element of damage to the remainder (*Matter of Board of Supervisors, Herkimer County,* 140 Misc. 894) and the destruction of a sylvan setting by taking a portion of lands for highway purposes is also a proper element of damage. (*Board of Supervisors of Hamilton County* v. *Brook Corp.,* 245 App. Div. 892.) An examination of the foregoing authorities, as well as many others, will show that the rule allowing the consequences of the use to which the portion taken is to be put as an element of damage has been applied to appropriations for a variety of purposes and is not confined to instances of physical invasions of the remaining portions. When part of a tract of land is taken, just compensation includes all damages to the remainder caused by the public use.

In the case at hand the respondent obtained a judgment of condemnation of portions of the lands of the appellants for the purpose of erecting thereon a sewage disposal plant and a pipe line and right-of-way to the same. This disposal plant was to serve a

considerable area and population. The premises of the appellants Silverman contained about ten acres of land with a frontage at one end of about 500 feet upon the Neversink river. Across the other end of the premises ran a State highway and upon the upper side thereof stood a hotel which would accommodate about 250 people. It was operated the year around. The lands between the highway and the river were used as a recreational area. They contained a swimming pool, picnic sites, benches and similar opportunities for health, entertainment and rest. A fine view of the Neversink river and the wooded countryside could be had from the front porch of the hotel and from many portions of the recreational area. For years this view had been advertised as one of the attractions of the hotel.

The Sher property ran from the highway to the river with a frontage of about 125½ feet on the State highway. It was 560 feet deep and with a two-story residence used as a summer home, with all modern improvements. The portion near the river provided a retreat from the noise and activity of the highway and was used for games, sunbathing and similar purposes.

The respondent town acting for the sewer district, acquired by condemnation a tract of 1.24 acres next to the river with a frontage of 143 feet thereon and a right-of-way from the State highway for laying sewer pipes and access to the sewage disposal plant. The plant itself is located upon lands taken from both the Silvermans and Lena Sher. It will consist of eleven structures, namely, a grit chamber, a chlorination house, two Imhoff tanks sixty-four feet in diameter, two dosing chambers twelve feet in diameter, two vats called trickling filters sixty-four feet in diameter, two secondary tanks and a sludge drying house. Five of these structures are open to the air, namely, the concrete chamber, the two Imhoff tanks and the two trickling filters.

The commissioners appointed to determine the compensation to be made to the owners of the property awarded the appellants Silverman $1,400 for the land and right-of-way actually taken, which included $400 special damages by reason of the necessity of relaying a water pipe line " and for consequential damages suffered by said defendants in addition to the foregoing, the sum of nine thousand dollars ($9,000), making a total of the damages suffered by said defendants the sum of ten thousand four hundred dollars ($10,400)." The appellant Sher received a similar award of $800 for the land and right-of-way actually taken and $1,600 consequential damages, making a total of $2,400. Confirmation of these awards was refused by the Special Term upon the ground that they were erroneous as a matter of law and excessive. The

learned Special Term was of the opinion that compensation had been awarded for a non-physical consequence not amounting to an actual interference with the lands of the appellants but founded on a mere state of mind.

The rule of just compensation made mandatory by both our State and Federal Constitutions should not be thus narrowly confined. Property owners whose lands have been preempted by the sovereign power of the State must be fully and fairly compensated for the losses which they have sustained. Such compensation includes not only the market value of the lands taken from them but also the reduction in value of the remainder. The portion of the hotel property left to the Silvermans has been rendered much less attractive by reason of the erection and operation of a sewage disposal plant in close proximity and full view of both the recreational area and the hotel. While it may to some slight extent be a mere state of mind that keeps guests away from this hotel, nevertheless the damage to the hotel owners is very real. Theirs is not an imaginary loss. The value of their hotel has been substantially reduced by the act of the respondent which the owners were powerless to prevent. The remainder of the Sher property has been similarly reduced in value by the presence of the sewage disposal plant. With admirable frankness counsel on the argument conceded that there had been such depreciation in the value of the remainders of these premises caused by the sewage disposal plant. But we were told that these are losses which the owners themselves must bear, that they are damages for which no recovery may be had. With this contention we do not agree. These are actual and serious consequential damages to these appellants. Proof as to their amount was produced upon the hearings before the commissioners and the commissioners have fixed the amount of such damages.

Where only a portion of a parcel of land is taken the damages are measured most easily and accurately by the difference between the value of the entire parcel before the taking and the value of the remainder after the taking. Such difference reflects both the value of the portion taken and the consequential damages to the remainder. The market value after the taking of necessity contemplates any diminution due to the use to which the preempted portion is to be put. The willing buyer then gives consideration to the structures and operations on the adjoining lands, and the willing seller is compelled to make allowance for them. As long as these appellants owned the entire premises they could regulate and control the purposes to which these lands might be put and could prevent obnoxious and unattractive uses on any portion of them. But once they were deprived of a portion of such lands they lost control

thereof, with the consequent diminution in value of the remainder. And it was the act of the respondent in depriving them of part of their lands and erecting this sewage disposal plant thereon that is directly responsible for this loss. The damages to these appellants were actual and capable of admeasurement. The impairment in value was positive. Competent proof as to its existence and extent was produced. The commission had no difficulty in fixing the amount. The order of the Special Term should be reversed, with twenty-five dollars costs, and the report of the commissioners confirmed, with costs and allowances to be made by the Special Term.

HILL, P. J., CRAPSER, HEFFERNAN and FOSTER, JJ., concur.

Order of the Special Term reversed on the law and facts, with twenty-five dollars costs; award made by the commissioners reinstated and confirmed, with costs and allowances to be fixed by the Special Term.