Jacob Markowitz, J.
The petitioner, fee owner of Damage Parcel 117, in this proceeding seeks an order which would in effect compel the mortgagee of the property to accept payment of the unpaid principal amount of its mortgage out of an advance payment of the award for this parcel, with interest at 4% per annum from the date of the vesting of title, November 2, 1964 to March 10,1965, the date when the Comptroller of the City of New York was ready to make the advance payment. The mortgagee contends that, in addition to the unpaid principal, it is entitled to interest at the rate of 6% to the maturity of its mortgage because the petitioner and the mortgagee had so agreed in the agreement under which the mortgagee had committed itself to make the mortgage loan and in the mortgage documents.
The mortgagee granted claimant a mortgage loan based on the agreement dated May 7, 1962 which loan was secured by a mortgage. Both the agreement and mortgage (par; 19) con- *560 tamed the following salient language: “ In the event there is a condemnation or taking of the captioned premises by the City of New York or any other governmental authority having jurisdiction prior to the maturity of the loan, the party of the second part (owner) hereby agrees to pay the difference in interest received by the party of the first part (mortgagee) from the City of New York or other governmental authorities and the 6% per annum provided for herein from the date of such condemnation or taking to the date of the maturity of the loan. ’ ’
There is no doubt that with a view to this specific situation, a condemnation of this property, the mortgagor agreed that from the award it would pay to the mortgagee the unpaid balance of the mortgage plus interest at the rate of 6% per annum from the date of the last interest payment to the date of maturity, May 7, 1967. It is also abundantly clear that, notwithstanding the payment by the city of a lesser interest rate for a lesser period, the petitioner obligated itself to pay the difference between such amount and 6% to the maturity date of the mortgage. Must the specific agreement of the parties be frustrated? Must the petitioner’s contractual and mortgage obligation thus voluntarily entered into to meet this specific contingency be impaired and dissolved by this court?
The petitioner contends that the specific voluntary agreement of the parties must fail because of the provisions of section B15-37.0 of the Administrative Code of the City of New York and the holding-in Fliegel v. Manhattan Sav. Bank (296 N. Y. 214 [1947]) the cases therein cited, and certain Special Term decisions following the Fliegel case.
Section B15-37.0 of the Administrative Code reads in part: ‘ ‘ a. Where the whole of any lot or parcel of real property, under lease or other contract, shall be taken, all the covenants, contracts and engagements between landlord and tenant or any other contracting parties touching the same, or any part thereof, upon the vesting of title in the city, shall cease and determine and be absolutely discharged.” The covenants of the lease or other contract which cease and determine are those which touch or concern the interests of the parties in the real property not in the award. Paragraph 19 of the mortgage involved herein is a contract with respect to the apportionment of the condemnation award in the event of condemnation of the property. It does not touch or concern the real estate nor does it propose to affect or add to the obligation of the sovereign with respect to the award. It affects only the obligation of the parties to the contract as to their interests in the total award which the sovereign is obligated to make.
*561 Contracts with respect to the apportionment of awards in condemnation may be made in accordance with the respective interests of the multiple owners of the parcel condemned. 1 ‘ The matter of such apportionment is of no concern to the condemnor and is a problem in which only the claimants are involved. It follows, therefore, that the claimants, among themselves, are free to agree as to the manner in which the award may be apportioned.” (Nichols, Law of Eminent Domain [Rev. 3d ed.], vol. 2, par. 5.3 [4]).
In Matter of City of New York (Allen St.) (256 N. Y. 236, 242-243) the court stated: “ In fixing awards in condemnation proceedings, the value of what has been taken must be determined and then that value must be divided among those whose interests are extinguished by the taking. Those interests may be defined by contract of the parties interested and in the same way the parties may determine by agreement how compensation shall be divided upon the extinguishment of those interests by the sovereign. ’ ’
If section B15-37.0 of the Administrative Code were to be interpreted, as petitioner contends, to invalidate an agreement between the mortgagee and the mortgagor as to how the award with interest as paid by the sovereign should be apportioned between the parties, it would be of doubtful constitutionality as an unreasonable and arbitrary abridgment of the liberty to contract. While there is no absolute right of freedom of contract, the exercise of legislative authority to abridge it can be justified only where the enforcement of such a contract would conflict with dominant public interests (Advance-Rumely Co. v. Jackson, 287 U. S. 283, 288). Otherwise a statutory restraint on the freedom of the parties to contract is violative of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the State Constitution. In Smith v. Bush (312 F. 2d 131, 134) the Fifth Circuit Court of Appeals pointed out: 1 ‘ In the exercise of the so-called police power a state may circumscribe the freedom of an individual to contract in order to promote or preserve the health, safety, morals and welfare of those subject to its jurisdiction. Workmen’s Compensation acts have been enacted in the exercise of this power and such statutes, in varying extent, restrain the freedom of contract between employer and employee. The Federal Employers’ Liability Act prohibits contracts exempting carriers from the liability imposed by the Act. Other instances might be oiled. See Annotation 84 A. L. R. 1297.”
It seems obvious that there is no dominant public interest, no situation invoking the police power to promote or preserve the
*562 health, safety, morals and welfare of the public to prevent mortgagee and mortgagor of a piece of property to be taken in condemnation from providing as between themselves that although the sovereign is required only to pay 4% interest that out of the award the mortgagee can take its unpaid principal and 6%, thereby reducing the share of the award going to the mortgagor; hence to interpret section B15-37.0 as contended by the petitioner would render it unconstitutional. Furthermore, to do so would run counter to the current of authority summed up in the citation to Nichols’ treatise, .supra, and the statement of the Court of Appeals in Matter of City of New York (Allen St.) (258 N. Y. 236, 242, supra),
Parenthetically it may be noted that the genesis of section B15-37.0 was to obviate the inequity of a tenant’s continuing liability under a lease as he was at common law even though the demised premises had been taken in condemnation.
The petitioner has argued that the power of eminent domain ‘ ‘ exists independently of constitutional limitations” and is “ superior to all property rights ”. This argument is not without qualification. The petitioner argues that the case of People ex rel. Horton v. Prendergast (220 App. Div. 351, affd. 248 N. Y. 215, app. dsmd. 278 U. S. 579) stands for the proposition that eminent domain antedates constitutional and legislative enactments. Even if this were so, which is doubtful (see Berman v. Parker, 348 U. S. 26, 36, where the court stated: “ The rights of these property owners are satisfied when they receive that just compensation which the Fifth Amendment exacts, as the price of the taking ”) it is not relevant. The contract of the parties as to apportionment of the award should have the same constitutional protection as any other.
The constitutional question involved herein is statutory restraint on the freedom of parties to contract in violation of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the State Constitution. Petitioner refers to “impairment of the obligations of contracts ”. The mortgagee does not seek relief under such a concept. The petitioner mortgagor and mortgagee entered into the mortgage in 1962 while the legislation upon which section B15-37.0 was enacted was adopted in 1897. There is no claim here that subsequently enacted legislation impairs an existing contract. We hold that to interpret section B15-37.0 of the Administrative Code as the petitioner mortgagor contends would result in an invalid application of an existing statute to the rights of parties to freely contract under Federal and State Constitution due process clauses.
*563 This leaves us with the question of the applicability of Fliegel v. Manhattan Sav. Bank (296 N. Y. 214). The cited case, the decisions on which it relies and decisions which have followed it are not pertinent for one or more of the following reasons. They do not represent a conflict between the parties to the contract but basically a conflict between the mortgagee and the sovereign; where the mortgagee asserts his rights in the condemnation proceeding against the sovereign rather than as here against the other contracting party with the sovereign substantially in the role of stakeholder. The predicate for the mortgagee’s claim in the cited cases was the interest rate provided for in the mortgage but the parties did not as in the case at bar contract specifically for the contingency of condemnation and the apportionment of the award in such event. In Copp v. Sands Point Marina (21 A D 2d 824 [2d Dept., 1964]) in a memorandum dissent by Justices Christ and Hill, it is stated: “ Moreover, whatever the factual situation may have been in other cases, the parties here never contemplated that the contract interest rate would survive the statutory interest rate.” Following the Fliegel and cases therein cited, the majority held that mortgagees who had not filed a claim in condemnation proceedings could sue on the mortgage note to recover arrears of interest at the 5% contract rate but added that if the mortgagee should be paid the debt or interest from the award the mortgagor might be entitled to a refund of the interest in excess of the statutory 4% rate after vesting of title in the condemnor. The case is not authority for the situation in the ease at bar because as the dissent pointed out in the cited case the parties had not made any agreement as to the division of the award so as to give the mortgagee a higher rate of interest.
There remain to be disposed of certain other points raised by the mortgagor. Mortgagor’s reference to Nichols (vol. 2, par. 5.9 [7]) is not in point since the section deals with contracts between a municipal corporation and private parties dealing with some government matter. New York City is not a party to the mortgage contract herein.
Nichols (vol. 2, par. 5.73 [2]) is a reference to the minority view that the person in whose favor a restrictive building covenant runs does not have a compensable interest in a condemnation which prevents compliance with the restriction. (Actually New York is in the majority camp [Flynn v. New York, Westchester & Boston Ry. Co., 218 N. Y. 140].)
Nichols (vol. 2, par. 5.76[2]) states that good will and profits from private contracts from the use of the land are not compensable. The mortgagor and mortgagee in this case did not *564 contract with respect to the use of the land; they contracted for an apportionment of an award in condemnation. Mortgagor argues that the case of Mullen Benevolent Corp. v. United States (290 U. S. 89, 95) is in support of its position. The plaintiff therein held certain assessment bonds and at the same time of taking, existing assessments were insufficient to pay the bonds. While the taking cut off the bondholder’s right to any future assessments, it did not mean that the condemnor had appropriated such right of future assessment. The acquisition of the property by the United States “ at most frustrated action by the city to replenish the assessment fund to which alone the bondholder must look for payment of his bonds ” and it was held this was not a taking of the bondholder’s property.
The Mullen case is one of a line of cases involving incidental damages for which no recovery is allowed in most jurisdictions and is clearly distinguishable from the case before us. There is no assertion here that the mortgage lien is not terminated and that therefore the city must take over the mortgagor’s obligations, nor is this a case where a profitable contract from the use of the land has been frustrated by a taking. The contractual obligation sought to be enforced does not involve or touch the land. It is a contractual obligation of the mortgagor apart from the lien of the mortgage on the land which has been substituted for the equitable lien on the award. The mortgagee is not seeking an award for incidental damages from the city. It is demanding that constitutional due process of law be applied, that its freedom to contract in anticipation of a taking for payment by the mortgagor of damages by apportionment of the award be upheld.
The case of United States v. Certain Lands in Borough of Brooklyn (129 F. 2d 577) turned on the question of when a deposit was made by the United States and is not in point.
Mortgagor’s contention that the mortgagee, having filed its claim in the proceeding, has elected to look to the city to pay the mortgage lien, is not contested. The city, however, out of the award which far exceeds such lien should also pay the contracted apportionment of the award in the amount of 6% interest per a.nmim to maturity of the loan — not as an additional amount of award to be distributed or required as a matter of law to be paid by city funds, but as proper apportionment of the advance payment award already made as between the parties and in accordance with their contract.
For the mortgagor to plead unjust enrichment at this time flies in face of its application for the mortgage, the commitment therefor and the contract it entered into when it executed the *565 mortgage. Freedom to contract in a market wliere lenders are in the keenest competition to place funds and the parties therefor in an equality of bargaining position should not be invaded; nor frustrated by a plea of unjust enrichment which is in direct conflict with what the parties voluntarily contemplated.
Payment of any part of the award to claimant herein must be conditioned upon payment by claimant to mortgagee out of its share of the award, the unpaid balance of the mortgage plus interest at the rate of 6% from the previous interest payment day to May 7, 1967 pursuant to the consolidated extension agreement and mortgage.