### F. G. Chapin et al., Appellants, v. Thomas Dougherty, Appellee.

EASEMENTS—*when equitable, exist.* Where the proprietors of lots establish a plan or scheme to create a desirable residence district and to that end adopt certain building restrictions, such restrictions will be enforced as against a purchaser with notice in favor of a purchaser who was induced to acquire his property by reason of such restrictions.

Bill for injunction. Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the March term, 1911. Reversed and remanded with directions. Opinion filed November 11, 1911.

JOHNSON & JOHNSON and W. L. COLEY, for appellants.

R. V. GUSTIN, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

Appellants, F. G. Chapin, A. J. Barnham and L. R. Ganote, filed their bill for an injunction to restrain appellee from the erection of a building on Harding avenue commonly called North Fortieth street, in the city of East St. Louis. A demurrer was interposed and sustained; and a decree entered dismissing the bill at the cost of the appellants. Appellants have appealed from that decree.

In substance the bill charged that appellants were severally the owners, and had been for five years, of lots in block eighteen, in East Landsdown subdivision in the city of East St. Louis, and that appellee was the owner of lot twelve in block twenty in said subdivision, all of said lots fronting on said North Fortieth street; that appellants purchased their lots for the purpose of establishing permanent homes and that they had resided thereon with their families for five years; that they respectively purchased said lots subject to the following conditions, to-wit: That only one house should be built on one lot; that no house should be less than two stories high nor cost less than two thousand dollars; that no building should be built less than thirty feet from the street line of the street on which the lots fronted, to-wit, the street known as Harding avenue, commonly called North Fortieth street and that the property should not be used for other than dwelling purposes; that said conditions were a part of a general plan or scheme adopted by the proprietors of said subdivision for the benefit of all purchasers of lots therein and especially upon said street, and said scheme was held out to all purchasers of lots therein as an inducement to purchase; that the deeds to appellants contained said conditions and restrictions and were recorded in the recorder's office of St. Clair county, five years before the filing of the bill herein.

It was further alleged that at the time appellants purchased, it was a matter of common knowledge throughout said subdivision and a general and tacit understanding publicly known to all owning or contemplating the purchase of property there, especially on North Fortieth street, that all lots would be restricted as above stated as part of the general plan or scheme above mentioned and that the subdivision would be an exclusive residence district free from the annoyances of public business houses of every kind; that they purchased and were induced to purchase with such understanding and paid higher prices for the property for that reason than they would have paid otherwise. All of which facts were well known to appellee before he purchased the property in said subdivision. The bill further averred that appellee notwithstanding such restrictions and conditions and his full knowledge thereof, had commenced to excavate on his said lot for the purpose of erecting a double flat and business house full up to the street line on North Fortieth street in violation of such general plan or scheme and such conditions and restrictions; that said proposed building was injurious to them; that it cut off their view; destroyed the symmetry of the general plan which it was represented to them and to the general public by the then owners would be maintained; that it would reduce the value of their properties to the extent of one thousand dollars each and would convert said street from its original plan of a private restricted residence street into a public or business street. It was further averred that as soon as it became known to them that appellee intended to erect said building, they objected and protested and that appellee ignored said protests. The bill concluded with an averment that irreparable injury would result from the erection by appellee of such proposed building.

It is claimed by appellants that the allegations of the bill are sufficient to authorize a court of equity to re-

strain the threatened alleged injury and that the court erred in sustaining the demurrer to the bill and dismissing it.

If the averments of the bill are sufficient to entitle appellants to relief in a court of equity it must be upon the ground that appellants' rights are in the nature of an easement or servitude upon the lot of appellee as well as all other lots along North Fortieth street which are alleged in the bill to be within the scheme or plan adopted by the proprietors of the lots. While the restrictions alleged were incorporated in the deeds to appellants, no restrictions were contained in the deed to appellee nor in the plat of the premises. By the averments of the bill there was a general plan or scheme adopted by the proprietors whereby the property was to be devoted exclusively to residence purposes. The plan embodied the kind of residences which were to be erected, their minimum cost and the distance they were to occupy from the street line, and the plan was known to appellee when he purchased, and was an inducement to appellants to purchase and pay a higher price than they would have paid otherwise. The question is whether appellee under such averments is bound to observe such general plan in the erection of his building.

There is a class of easements called equitable, because they are chiefly cognizable in courts of equity. "A covenant though in gross at law may nevertheless be binding in equity even to the extent of fastening a servitude or easement on real property or of securing to the owner of one parcel of land a privilege or as it is sometimes called a 'right to an amenity' in the use of an adjoining parcel by which his own estate may be enhanced in value or rendered more agreeable as a place of residence.—A purchaser of land with notice of a right or interest in it existing only by agreement with his vendor is bound to do that which his grantor had agreed to perform because it would be unconscien-

tious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate of which he had notice when he became the purchaser.— There may be neither privity of estate nor privity of contract between himself and those who attempt to appropriate property in contravention of the use or mode of enjoyment impressed upon it by the agreement of their grantor and with notice of which they took the estate from him.'' Parker v. Nightingale, 6 Allen (Mass.) 341.

Citing the case of Tulk v. Moxhay, decided by the English Courts of Chancery, Washburn in his work on Easements and Servitudes says, in quoting from that case, ''that the question does not depend upon whether the covenant runs with the land is evident from this, that if there was a mere agreement and no covenant this court would enforce it against a party purchasing with notice of it for if an equity is attached to the property by the owner no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased.''

Many cases illustrating the nature of the equity under consideration have been decided. In Sharp v. Ropes, 110 Mass. 381, it was held that where a tract of land was subdivided into lots and they were conveyed to separate purchasers subject to conditions that were of a nature to operate as inducements to the purchaser and to give to each purchaser the benefit of a general plan of building or occupation so that each should have attached to his own lot a right in the nature of an easement or incorporeal hereditament in the lots of the other, a right was thereby acquired by each grantee which he might enforce in equity against any other grantees. To the same effect is Frye v. Partridge, 82 Ill. 267, and Willoughby v. Lawrence, 116 id. 11. See also Hays v. St. Paul M. E. Church, 196 id. 635.

By the averments of appellants' bill there was a

plan or scheme by the proprietors of the lots described, to create a desirable residence district, to accomplish which certain restrictions were, and were to be, imposed respecting the character, cost and location of the buildings of which all persons purchasing lots including appellee had notice. It is immaterial there were no restrictions in appellee's deed if he had the notice averred. It is alleged the plan or scheme was the inducement to appellants to purchase for residence purposes at a higher price than they would have otherwise paid, and that each of them has observed the restrictions in their deeds. By the facts alleged the proprietors of the lots when they so sold to appellants and made a severance of them impressed the servient estate of which they remained the owners with a servitude for the benefit of the appellants who became the owners of the dominant heritage, and the lot purchased by appellee with notice of such alleged facts came to him impressed with the same easement or servitude that was upon it in the ownership of his grantors.

We are of opinion the bill on its face was sufficient and the court erred in sustaining the demurrer.

The cause will be reversed and remanded with directions to overrule the demurrer to the bill.

*Reversed and remanded with directions.*