BAXTER *v.* OGOOSHEVITZ.

1. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MUTUAL MISTAKE OR FRAUD—BUILDING RESTRICTIONS.

In injunction proceedings to restrain defendant from building a public garage on a lot purchased on contract containing a clause restricting the use of said lot to residence purposes only, *held*, that defendant failed to sustain the burden of proof under his cross-bill to have the contract reformed to the effect that there was either a

mutual mistake or fraud in inserting the restrictive clause in the contract.[1]

2. INJUNCTION—EQUITY—BUILDING RESTRICTIONS—ENFORCEMENT—MATTER OF RIGHT.

The enforcement in a court of equity of restrictive covenants in a deed is not a matter of absolute right, and is governed by the same general rules which control equitable relief by specific performance.

3. SAME—INTEREST OF GRANTOR—BUILDING RESTRICTIONS—STATUTES—DISREGARDING RESTRICTIONS.

Under the statute providing that conditions annexed to a grant or conveyance of land that are merely nominal may be disregarded (3 Comp. Laws 1915, § 11564), some interest of the grantor must appear before the restriction will be enforced.

4. SAME—MODIFICATION OF DECREE.

Where the only interest plaintiffs had in property in the neighborhood was the balance of $3,300 still owing to them on the contract on the lot in question, they still had an interest in the enforcement of the restrictive clause, but the decree of the court below for a perpetual injunction should be so modified as to be in force only until defendant has fully paid up and performed the terms of his contract.

Appeal from Wayne; Hosmer, J. Submitted February 4, 1919. (Docket No. 98.) Decided April 3, 1919.

Bill by John K. Baxter and another against Isaac Ogooshevitz to enjoin the violation of building restrictions. From a decree for plaintiffs, defendant appeals. Modified and affirmed.

*Hugh M. Edwards,* for plaintiffs.

*William Friedman,* for defendant.

STONE, J. The bill of complaint in this case was filed to obtain an injunction restraining the defendant from erecting a public garage on premises which were under a contract of sale to the defendant from the plaintiffs. The lot in question is situated on the south

---

[1]See note in 34 L. R. A. (N. S.) 730.

side of Kenilworth avenue between Woodward avenue and John R. street, city of Detroit, and at about the middle of the block. It is a part of an earlier platted subdivision, and the lots in the block were conveyed to the original buyers without restrictions. The lot in question was sold to defendant on land contract, the plaintiffs retaining title until paid for. It was entered into on February 28, 1917. This land contract was what was known as the ordinary Union Trust Company form of agreement, and contained, among others, the following provisions:

"It is a condition of this agreement that the party of the second part, his heirs and assigns, shall use the premises herein described for residence purposes only."

And also:

"It is agreed by the parties hereto that the said parties of the first part, on receiving payment in full * * * will * * * execute and deliver to said party of the second part a good and sufficient warranty deed, * * * which deed shall contain the same building restrictions contained in this contract."

The price to be paid was $4,000.

At the time of the execution of the contract defendant paid down $700 and was to pay the balance in one year with interest at six per cent. per annum, payable semi-annually. When the year was up, defendant applied for and obtained an extension of time of two years. At the hearing the equities of the parties in the premises were as follows: Lot sold for $4,000. Defendant paid $700 down payment, and he still owed plaintiffs $3,300, with interest at six per cent. from February 28, 1918.

The answer of the defendant admits the execution of the contract, in the form set forth in the bill of complaint, and also that a building for business purposes was being erected on the lot. By way of cross-bill, however, defendant asked to have the contract

reformed, so as to omit the clause that the premises therein described should be used for residence purposes only, on the ground of an alleged error and mistake in the insertion of such clause in the contract.

It is asserted by plaintiffs' counsel, but not distinctly shown by the record, that plaintiffs owned the lot as tenants by the entireties. It appeared that prior to the execution of the land contract in question, the property had been listed by the plaintiff John K. Baxter, with Charles Doxtator, a Detroit real estate agent, for sale. This real estate agent had on February 9, 1917, made up an application to purchase the lot, in which the lot was described as unrestricted. This was made to and signed by one Jacob Shevitz (who paid $150 thereon) and was signed by John K. Baxter only. When it came time to close the deal Mr. Baxter went to the office of the real estate agent and there met Mr. Shevitz, who introduced Mr. Baxter to the defendant—a relative of his. Mr. Shevitz then told Mr. Baxter that he was not going to buy the lot but that the defendant would buy it. Mr. Baxter had had the contract drawn by his attorney before he went to the real estate agent's office. The name of the defendant was substituted for that of Mr. Shevitz by Mr. Doxtator, and the payment of $150 was allowed to apply on the contract.

There was a conflict in the evidence as to what happened at the time the contract was signed. It should be stated that at the time the contract was entered into, the plaintiffs were the owners of a four-family apartment building located on the same street and two or three doors away from the lot in question. They were at that time negotiating a sale of the apartment property, and the sale was closed a short time thereafter. Both the defendant and Mr. Shevitz testified that the contract was signed by the defendant without reading it, the defendant testifying that he

looked only "at the amount of money," and he testified that there was no talk whatever about any restriction.

On the other hand on the direct examination of Mr. Baxter he testified as follows:

"*Q.* Now I am asking you to relate your conversation with Mr. Ogooshevitz regarding the transaction of this' property and I wish you would bring out in detail exactly what was said in regard to the transaction, and whether or not Mr. Ogooshevitz entered into this agreement and talked the matter over with you in regard to restrictions?

"*A.* Well, when I gave him the contract to read it over, he came to that part about the restrictions, and he says, 'I don't like this very well,' and, I said, 'Well (I wasn't sure whether I was going to make a deal to my four-family flat or not), I wouldn't sell under any other conditions, and that part stays in, and I wouldn't scratch out the restriction and let you build anything you like.' But if I sold my property, I wouldn't mind, and then he said his intention was to build a four-family, anyway. 'I guess it will be all right,' he said.

"*Q.* Did he read the contract over?

"*A.* Yes."

On cross-examination he testified as follows:

"*Q.* What was said about the restriction?

"*A.* Well, Mr. Doxtator read the contract. When he got through he said that this contract was going to be transferred to Mr. Ogooshevitz. When I found out that Mr. Ogooshevitz was going to buy the lot Mr. Doxtator read the contract over, and said that everything was all right, except the name, and Mr. Ogooshevitz said he did not like the restriction, but I said I wouldn't sell under any other condition.

"*Q.* Did you tell Mr. Ogooshevitz that if you had the apartment house sold that then you wouldn't care about putting in this clause about building restrictions?

"*A.* If I had it sold I would have scratched that out, but as long as it is mine, I will not sell the lot

under any conditions, while I was the owner. I owned the apartment house at that time."

The testimony of Mr. Baxter was corroborated by that of his wife, who was also present at the execution of the contract.

Upon the subject of whether the plaintiffs had any interest in the apartment building at the time of the hearing, Mr. Baxter also testified, on cross-examination, as follows:

"*Q.* You state you still own the property three doors from this lot?

"*A.* No, I don't state I own it. I owned it at that time, but not now.

"*Q.* When did you sell this other property that was three doors away?

"*A.* The deal was going on at the time, but I closed the deal a week after I sold the lot. I do not hold any mortgage or lien of any kind on that building, the apartment house. When I purchased the lot which I sold to Mr. Ogooshevitz there were no restrictions on it. I don't know whether there are any building restrictions on any other lots in this same block. I never knew of any other lot in that block that was sold with the building restrictions on it."

It further appeared, without contradiction, that the only interest which the plaintiffs, or either of them, had at the time of the hearing in any property in the said block is the amount that is still unpaid upon the land contract in question.

It appeared upon the hearing, from the testimony of divers witnesses, that this neighborhood was not exclusively a residential district, but was mainly of that character. The learned circuit judge who heard the case found in favor of the plaintiffs upon the main issues presented, and filed a written finding in which he said in part:

"I am satisfied from the testimony that this is more of a residential than a business section, and I see no

reason why, if they saw fit, and believed that the value of the property would be lessened by putting in the garage at that particular place, the complainants in this case should not have the contract enforced, and therefore the decree of this court will be, that until the terms and conditions of the contract have been performed and the condition shall be carried out, an injunction may issue in accordance with the opinion of the court.

"I am not prepared to say that after their interest in the property has ceased altogether, that it can be prosecuted by other people, but, of course, that is not a necessary decision at the present time."

The decree, however, as entered by the court below, made the temporary injunction perpetual, the language being:

"And the said defendant is hereby restrained from erecting, constructing or completing any building upon said premises described in said bill of complaint filed in said cause which will violate or conflict with the restrictions imposed upon said premises by the contract."

The defendant has appealed, and he claims in this court:

(1) That the land contract should be reformed to conform to the original, preliminary agreement by omitting the restrictive clause.

(2) That if the contract is not reformed, the circumstances surrounding the entire transaction, the present situation of the plaintiffs, and the conditions on the street, do not warrant the issuance of an injunction.

(3) That if, in the opinion of the court, an injunction should issue, it should be limited until the defendant has performed the conditions in the contract and has received his deed.

1. A careful reading of the entire testimony in the case leads us to the conclusion that the defendant has failed to sustain the burden of proof under his cross-bill, to the effect that there was either a mutual mis-

take, or fraud, in inserting the restrictive clause in the contract. We are of opinion that the contract, as signed by the parties, must control.

2. We agree with the defendant's contention that the instant case is not one where a general scheme or plan of improvement has been established, and a departure therefrom has been attempted by one of the owners of lots conveyed in the restricted district. Under the evidence, we are of the opinion that the restrictive clause was inserted in the contract for the purpose of protecting the plaintiffs' apartment building property, and their interest in the property described in the contract. To the extent of their interest such provision should be sustained. It appears that plaintiffs have a present interest in the observance of the condition.

We recognize the rule as stated by counsel, and as often announced by this court:

"The enforcement in a court of equity of restrictive covenants in a deed is not a matter of absolute right, and is governed by the same general rules which control equitable relief by specific performance."

It is urged by defendant that the issuance of the injunction will not benefit the plaintiffs, but will bear heavily upon the defendant. Counsel for defendant calls attention to section 11564, 3 Comp. Laws 1915, which is as follows:

"When any conditions annexed to a grant or conveyance of lands are merely nominal, and evince no intention of actual and substantial benefit to the party to whom, or in whose favor they are to be performed, they may be wholly disregarded." * * *

In considering this section this court, in *Barrie* v. *Smith*, 47 Mich. 130, in speaking of a clause in a deed prohibiting the sale of intoxicating liquors upon the premises, said:

"The right to insert conditions, like the one in this case, we do not question, where it appears that the grantor has a special interest in the enforcement thereof. An owner of real estate, when conveying a part thereof, may undoubtedly impose conditions, which, if reasonable, courts would by an appropriate remedy restrain and prevent the violation thereof, for the protection of the grantor and his privies in estate, certainly so long as the reasons which gave rise to the conditions still existed.

"Nothing, however, of this kind exists in the present case. It does not appear that the plaintiffs at the time of the conveyance or since then owned any other lands in the village or vicinity of Otsego, or that they resided in the village or vicinity, or had in any way a special interest in the enforcement of this condition. A party owning two adjoining lots or a tract of land, may when selling one, or a part of the tract, be interested in preventing any noxious business from being carried on thereon, or in having it improved in a certain manner. The reason in such cases would be apparent, and so long as it existed should be ground for enforcing the condition. When, however, the grantor has parted with all interest in the remaining property, while his subsequent grantees may be interested in and have a right to insist upon such a condition, it may be very questionable whether he has any such right or interest. * * *

"Where the observance of the condition is an existing substantial benefit, or its breach works an actual substantial injury to the grantor it cannot be considered as nominal merely, but what the effect of a breach even in such cases would be we need not determine in the present case."

The same case appears by the title of *Smith* v. *Barrie*, 56 Mich. 314 (56 Am. Rep. 391). Under the record made in that case this court held that the grantors had a purpose in view by the restriction which was grounded in substantial interests; that the condition was not arbitrary, but was imposed for the protection of their somewhat extensive business.

A similar question also arose in *Abraham* v. *Stewart*, 83 Mich. 7 (21 Am. St. Rep. 585). This same statute was invoked in that case, but the court held that the grantor had a substantial interest sufficient to sustain the restriction. The court, however, remarked:

"It is entirely possible that the time may come when the maintenance of these conditions will be of no benefit to defendant or her grantees. (The defendant was the grantor.) In such case complainant and his grantees would no longer be compelled to maintain them. That is a question for future consideration. Courts will not compel the observance of restrictions and conditions when they have ceased to be of any benefit."

While in this case there is no evidence of a general plan of improvement containing restrictions, it does appear that the plaintiffs have still a substantial interest in the premises described in the contract, and will continue to have such interest until the contract is fully paid up. That the plaintiffs, in order to obtain relief, must have a substantial interest in the maintenance of the condition is clearly established by the authorities. An illustrative case is that of *Dana* v. *Wentworth*, 111 Mass. 291. There the owner of a parcel of land bounding on a street conveyed it by a deed containing a condition that the grantee, or his heirs or assigns, should not build on the land within eight feet of the street. The grantee conveyed the land in several lots. *Held*, that the grantor could not maintain a bill in equity, for the benefit of the owners of some of these lots to restrain the owner of another from violating the condition, in the absence of evidence that the condition was imposed as part of a general plan for the benefit of the land granted, and of other land on the street. There the court said:

"The plaintiff does not show that since that conveyance she is the owner of any land which may be affected by a disregard of the restriction. She is not,

therefore, entitled to ask a court of equity to enforce the restriction for her own benefit."

Under the statutes providing that conditions "merely nominal" may be disregarded, some interest of the grantor must appear before the restriction will be enforced. 8 R. C. L. p. 1118.

The plaintiffs' interest in the premises described in the contract are such that they have the right to enforce this restriction so long as their interest remains. The language of Chief Justice OSTRANDER in *Hammond* v. *Hibbler*, 168 Mich. 66 (upon which point there was no dissent), is pertinent:

"It is the law of this State that a condition or covenant in a deed of real estate, restricting the use to which property may be devoted, and not opposed to sound public policy, may be sustained and enforced, *if the party in whose favor it is made or reserved has an interest in the observance of the condition or covenant*"—citing cases.

See, also, *Davison* v. *Taylor*, 196 Mich. 605, quoting language in *Whitney* v. *Railway Co.*, 11 Gray (Mass.), 359 (71 Am. Dec. 715).

3. While plaintiffs have an interest in the enforcement of the restrictive clause because there is still a sum of money unpaid on the land contract, we think the decree below was too broad and sweeping, and that it should be modified and the injunction should not be absolute and unlimited in its terms. It should be effective only until the defendant has complied with the terms of his contract. The learned circuit judge seemed to be of this opinion, as we have shown, and yet the decree herein perpetually enjoins the defendant from proceeding with the garage building. As we have already stated, the plaintiffs have no interest in any other property in the neighborhood, having sold and disposed of the apartment building. It appears to us that the restrictive clause was made for

the use of the plaintiffs and their property only. The only persons before the court are the parties to this suit. With the payment in full of the contract, the plaintiffs will have no interest of any kind or nature in the property involved in this case, or any other property in the neighborhood.

The decree below and the injunction will be modified, and be in force only until such time as said defendant has fully paid up and performed the terms of the contract with the plaintiffs, at which time the defendant shall have the right to apply to the court below for an order that said injunction become inoperative. As so modified, the decree below will be affirmed, with costs of this court to the appellant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.