HARLEY *v.* ZACK.

1. DEEDS—BUILDING RESTRICTIONS—RIGHT OF PROPERTY OWNERS TO ENFORCE.

Building restrictions on the lots of a subdivision, limiting a single two-story residence, at a minimum cost, to each lot, are a valuable property right which complying owners may enforce and maintain.

2. SAME—INJUNCTION.

In a suit by property owners to enjoin defendant from erecting a two-family flat in violation of building restrictions of which he had notice, evidence that the restrictions were part of a general plan which had been consistently followed and maintained, *held*, to justify a decree for plaintiffs.

Appeal from Wayne; Mandell (Henry A.), J. Submitted October 12, 1921. (Docket No. 100.) Decided March 30, 1922.

Bill by Joseph C. Harley and others against Morris A. Zack and another to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendant Zack appeals. Affirmed.

*N. Calvin Bigelow,* for plaintiffs.

*A. W. Sempliner,* for appellant.

STEERE, J. This bill was filed to restrain the erection by defendant Zack of a 2-family flat for which he had plans and was starting to build on the westerly 15.54 feet of lot 35 and the easterly 30 feet of lot 36 of Frazer & McLaughlin's subdivision in the city of Detroit. He acquired and holds the property under a land contract given him by defendant Hugh

Authorities passing on the question as to whether multiple residence structures as violation of restrictive covenants are collated in notes in 45 L. R. A. (N. S.) 726, and L. R. A. 1918C, 873.

Johnson, as trustee.    Johnson disclaims any active interest in this suit, saying of the transaction:

"At the time the deal was closed, there was talk about building restrictions.    *    *    *    Zack did not tell us he wanted to put a two-family flat.    He was told there were building restrictions on the property."

Frazer & McLaughlin's subdivision extends easterly from Woodward avenue, comprising about 2,400 feet lying on both sides of Josephine avenue which runs from Woodward avenue through said subdivision, continuing easterly through the adjoining Newcomb subdivision and beyond.    Said lots 35 and 36 lie adjacent to each other, 35 being east of 36, at the east end of the subdivision on the south side of and fronting Josephine avenue.    Subsequent to its platting Brush street was opened north and south through the subdivision 60 feet wide for which purpose lot 37 and the west 15 feet of 36 were taken, leaving the east 30 feet of 36 on the east side of the street next to 35.

Zack lived on Josephine avenue just east of this property and was familiar with the class of buildings in that vicinity.    He testified that he had lived in Detroit 5 years, was a builder, and being a foreigner he could not read his contract very well; that Johnson did not talk with him about restrictions, but said, on cross-examination, "at that time I bought the property, I knew the contract restricted the property for residence purposes only."

The adjoining Frazer & McLaughlin and Newcomb subdivisions were platted some 30 years ago, and the character of Josephine avenue where it runs through them was long since established as a well developed residence street, with single two-story dwellings of good quality on the respective lots set back a uniform distance from the street line, except two lots fronting on Woodward avenue

at the extreme west of the Frazer & McLaughlin subdivision, where the southeast corner of Woodward and Josephine avenues is occupied by a church and the northeast corner by a high school, the property for which was taken by condemnation proceedings.

That this subdivision was originally planned as a restricted residential district for family homes is indicated by a recorded contract dated June 4, 1891, from McLaughlin to James H. Stone, relating to 50 lots on Josephine avenue having a frontage of 2,108 feet, by which it is agreed they will hold the property jointly and each endeavor to make the best sales possible of the various lots, neither to sell or assign his interest in the same without written consent of the other, further providing:

"Nothing but two-story dwelling houses costing not less than $2,500 set on a brick or stone foundation, and the necessary outbuildings, shall be erected on each lot. Said buildings to be set not less than 20 feet from the front line of said lot. No old buildings are to be moved upon the premises."

Lot 35 is included in this conveyance, but not lot 36, which is restricted in defendant's contract to "residence purposes only." The two-family flat he started to build was partly on each lot. Most of the lots in this subdivision were sold under the restrictions above quoted. A few were restricted to residence purposes only. In the many transfers covering this property titles to lots were at times transferred without restrictions by the then grantors. But the testimony is conclusive that a general plan was early adopted, generally understood by those who purchased, consistently followed and maintained, for a strictly resident district of homes with a single, two-story dwelling on each lot, set 20 feet back from the street line along both sides of Josephine avenue, of kind and cost in compliance with those restrictions, except the two lots

fronting Woodward avenue occupied by the church and high school buildings. Plaintiffs are resident property owners living in their own homes built in compliance with these restrictions. At the time this case was heard there remained but two vacant lots, beside the property in controversy, on either side of Josephine avenue in that subdivision and all buildings except the church and school house are single, two-story dwellings on separate lots built as and where the general plan required. This condition also continued through the Newcomb subdivision which had resident restrictions for a dwelling house costing not less than $2,000 set back from the street line, as to which the home owners have also been vigilant to the point of litigation.

An examination of the record in the quite analogous case of *Kingston* v. *Busch*, 176 Mich. 566, shows that the lot upon which defendant there unsuccessfully attempted to build a two-family residence lies in the Newcomb subdivision on Josephine avenue near the lots involved in the instant case.

Defendant was fully advised and warned of the restrictions contended for here and the opposition he might expect, before he entered upon this building project. Mr. Beattie, whose home was just across the street, testified:

"He told me he was going to build a two-family flat. I told him about the restrictions and I recited two instances of similar cases where they attempted to build and found it impossible because the court had ruled against them. * * * I told him if he contemplated building a flat he had better get the consent of the property owners before doing so. If he did not, he would be up against a lawsuit."

Plaintiff Lathers roundly sums up the situation here as follows:

"With the exception of the church and the high school in Frazer & McLaughlin's subdivision on Jose-

phine avenue, there is no building other than a single dwelling house two stories in height set on brick or stone foundation and set back 20 feet from the front of the Josephine avenue line of the lot. The building restrictions have been observed. The residents have been very active to have the restrictions lived up to. There has been previous litigation with regard to them and I co-operated in that litigation. At the present time the residents have succeeded in maintaining the restrictions."

Such restrictions are a valuable property right which complying owners can enforce and maintain. The recorded restriction in full rests on lot 35. That the written restriction on 36 limits it only to residence purposes cannot avail defendant under the conditions shown here.

"That a portion of the conveyances do not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice (citing cases)." *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890).

The following reflection in *Kingston* v. *Busch, supra,* is equally applicable to the situation presented by this record:

"We are of opinion that a general plan of improvement is clearly indicated, and that there has been no departure from that plan. The plan was to have one residence for one family only upon each lot."

The decree appealed from granting the permanent injunction prayed for is affirmed, with costs to plaintiffs.

WIEST, CLARK, BIRD, and SHARPE, JJ., concurred. FELLOWS, C. J., and MOORE, J., did not sit.

The late Justice STONE took no part in this decision.