JOHNSTONE *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

POHLMEYER *v.* SAME.

1. COVENANTS—RESTRICTIONS FOR RESIDENCE PURPOSES FAVORED BY PUBLIC POLICY.
   Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy.

2. SAME—PRIVACY FOR HOMES VALUABLE RIGHT.
   That the right of privacy for homes is a valuable right has been expressly recognized by the court.

3. EMINENT DOMAIN—STATE SHOULD PAY VALUE OF WHAT IS TAKEN OR RESULT IS CONFISCATION.
   When the State takes private property for public purposes it should pay the owner the value of what it takes, of whatever that value may consist, so it is measured by the market; anything less being confiscation.

Building restrictions as property right for which compensation must be made, see annotation in 17 A. L. R. 554.

4. SAME—STATE SHOULD COMPENSATE OWNERS FOR DAMAGES
   CAUSED BY TAKING LOTS FOR RAILROAD RIGHT OF WAY.

   Although proceedings by the State to condemn land for a new
   right of way for a railroad company in exchange for its
   present right of way to be taken for highway purposes are
   conducted under the highway law (Act No. 352, Pub. Acts
   1925; Act No. 340, Pub. Acts 1927), it is the duty of the
   commissioners to compensate the owner for what his landed
   interest will suffer from the use proposed to be made of it
   by the railroad company.

5. SAME—MEASURE OF DAMAGES WHERE ONLY PART OF PARCEL
   TAKEN.

   Where the whole parcel of land is taken in condemnation pro-
   ceedings, the compensation to be made is the fair value of
   the land; where only part is taken, just compensation is not
   measured by proportionate acreage, but by the amount to which
   the value of the property from which it is taken is dimin-
   ished; the value of the part actually taken being allowed as
   direct compensation, but the decreased value of the residue,
   on account of the use made of the land taken, being also
   allowable as compensation, although it is strictly consequen-
   tial damage in nature.

6. SAME—RESTRICTIONS CONSTITUTE EASEMENTS—DESTRUCTION OF
   RESTRICTIONS COMPENSABLE.

   Where land was condemned by the State for a railroad right
   of way through a highly restricted residence subdivision, so
   that the restrictions, which constitute an interest in land,
   were destroyed, the owners of lots not taken suffered com-
   pensable damages.

7. SAME—POLICE POWER.

   The destruction of said easements is under the power of emi-
   nent domain and not by virtue of the police power; there
   being no difference in the character and effect of the power
   of eminent domain whether exercised by the State or by a
   municipality.

8. SAME—MEASURE OF DAMAGES FOR DESTRUCTION OF RESTRICTIONS
   IS DIMINUTION OF VALUE.

   Owners of property in a subdivision in which, under a general
   plan, the property is restricted to specified uses, and in which
   the restrictions are valid, subsisting, and enforceable against
   the lands in the hands of private owners, are entitled to com-

pensation upon the taking of any part of such subdivision for public use in violation of such restrictions; the measure of compensation being the actual diminution in value of the owners' premises.

9. SAME—IN DETERMINING DAMAGES BENEFIT AS WELL AS INJURY SHOULD BE CONSIDERED.

In determining the diminution in value of lots in a high-class residence subdivision by reason of the destruction of valid restrictions by condemning a railroad right of way through it, the effect, by way of benefit as well as by way of injury, of such use, is to be taken into account.

10. INJUNCTION—SPECIFIC PERFORMANCE OF BUILDING RESTRICTIONS NOT MATTER OF ABSOLUTE RIGHT.

Specific performance of building restrictions by injunction is not a matter of absolute legal right, but is governed by equitable considerations.

11. EMINENT DOMAIN—OWNERS ENTITLED TO RESTRAIN DESTRUCTION OF RESTRICTIONS UNTIL DAMAGES DETERMINED AND COMPENSATION MADE OR TENDERED.

Where the State was condemning a railroad right of way through a highly restricted residence subdivision in exchange for present right of way to be taken for highway purposes, the owners of lots not taken but who will sustain damages by reason of the destruction of the restrictions are entitled to restrain such destruction until determination of such damages by the State highway commissioner, as provided by section 4, Act No. 92, Pub. Acts 1927, and payment, tender, or deposit made.

Appeal from Oakland; Lamb (Fred S.), Collins (Joseph H.), and Gillespie (Glenn C.), JJ. Submitted October 2, 1928. (Docket Nos. 142, 143, Calendar Nos. 34,021, 34,028.) Decided December 4, 1928. Rehearing denied March 29, 1929.

Bills by George H. Johnstone and another and Frederick C. Pohlmeyer and another against the Detroit, Grand Haven & Milwaukee Railway Company and Frank F. Rogers, State highway commis-

sioner, to enjoin the construction of a railroad grade. The Bloomfield Estates Company and others were allowed to intervene as parties plaintiff. From a decree for plaintiffs, defendants appeal. Modified and affirmed.

*Atkinson, O'Brien & Clark* and *Carl Belz* (*Frank W. Atkinson,* of counsel), for plaintiffs.

*H. R. Martin* and *H. V. Spike,* for defendant railway.

*Wilber M. Brucker,* Attorney General, and *Kit. F. Clardy,* Assistant Attorney General, for defendant Rogers.

*Goodenough, Voorhies, Long & Ryan, Pelton & McGee, Andrew L. Moore,* and *Harry S. Merritt,* for interveners.

FEAD, C. J. This is appeal from a decree enjoining defendants from constructing a railroad grade on certain premises without first purchasing plaintiffs' interests therein or acquiring them in accordance with the statutes governing exercise of the right of eminent domain. It involves a phase of the Woodward avenue condemnation proceedings, other aspects of which are reported in *Fitzsimons & Galvin* v. *Rogers,* 243 Mich. 649, in which several of the questions here raised were determined.

Under Act No. 340, Pub. Acts 1927, the State has contracted to acquire a new right of way for the Detroit, Grand Haven & Milwaukee Railway Company in exchange for the present right of way to be taken for highway purposes. The new right of way runs through Bloomfield Estates subdivision in Oakland county. By general plan, adopted by the com-

mon owner in 1915, and evidenced by recorded instrument under seal, the subdivision is restricted exclusively to residences of stated minimum cost, with setback and other requirements. In pursuance of condemnation statutes, the State has purchased several of the lots from the original owner and is proceeding to take others from individual owners for such right of way. Except as to one lot, the conveyances on purchase are made subject to the restrictive covenants. Plaintiffs own lots in the subdivision, located 66 feet or more from the right of way, none of which is being taken by the State. It is conceded that the use to be made of the lots purchased and condemned by the State will constitute a violation of the building restrictions applicable to all the lots.

Parties interested in other subdivisions traversed by the new right of way have intervened and filed briefs. The instruments and conditions affecting their interests are not before us and we pass upon them only in so far as they may fit into the situation here set out.

The principal question is whether, because of the proposed violation of the restrictions, the State must pay compensation to the owners of other lots in the subdivision, whose land is not actually and physically taken, under our Constitution, art. 13, § 1, which prohibits the taking of private property for public use without just compensation therefor.

In *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890), the city purchased a lot in a subdivision restricted to residences and undertook to build a fire hall thereon. This court held that the city could not erect a building which would be in violation of the restrictions, without release from the other lot owners or condemnation of their inter-

ests.   Speaking for the court, Mr. Justice STEERE said:

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor; the validity of such restriction not being affected by the character of the parties in interest. * * *

"The contention that the city under its general police power may ignore this building restriction, and erect its fire engine house within the restricted district because it is necessary for the public good and to protect the lives and property of citizens in that locality, is not tenable. When such action deprives the individual of a vested right in property, it goes beyond regulation under police power, and becomes an act of eminent domain governed by the appropriate condemnation laws. Police power is regulative and restrictive only, limiting and dictating the owner's use of property for public safety, but never extends to depriving him of it for public benefit."

This opinion has been cited with approval by this and other courts many times, and has been regarded as announcing settled law of the State. Defendants, however, urge that the opinion is not in harmony with authority and principle, and should be over-ruled. Because of the importance of the question, we will re-examine it.

There are not many cases in point. Defendants have cited and rely upon *United States* v. *Certain Lands,* 112 Fed. 622, and *Doan* v. *Railway Co.,* 92 Ohio St. 461 (112 N. E. 505), which deny compensation to owners whose lands are not physically taken but are covered by common restrictions applying also to lands condemned.

In *United States* v. *Certain Lands, supra,* the deeds contained restrictions prohibiting the use of the property for certain specified industrial purposes, for the liquor traffic, and for "other noxious, dangerous, or offensive trade or business." The government condemned some of the land for coast defense fortification. The district court held that owners of other lands subject to the common restrictions were not entitled to compensation because:

"I think this case might well be put upon the ground that the right acquired by the government does not appear to be in any substantial particular inconsistent with the provisions of this condition, or destructive thereof, and that for this reason there is no taking of the claimants' property in this particular."

The court recognized that:

"Were we dealing with a condition of a different character, such as a building restriction appurtenant to the claimants' estates, whereby their value was greatly enhanced through the fact that light and air could not be cut off, or perhaps a fine prospect destroyed, a different question would be presented."

The court entered upon a discussion of public policy in connection with restrictions, and observed:

"The more reasonable view would seem to be that, if a number of summer residents choose to locate their houses upon those points of land which command the approaches by sea, they take the risk that such natural points for defense will at some time be occupied by the government; and, while they may be entitled to such increased values as result from the expectation that private persons will not carry on offensive occupations on the tract, they are not entitled to the value of a belief or expectation that the government will not apply these natural points

of defense to the public use. While the owners may so contract as to control private business, and thereby increase the values of their estates, they are not entitled so to contract as to control the action of the government, or to increase the values of their lands by any expectation or belief that the government will not carry on public works in their vicinity, or that in case it does, it will compensate them for the loss due to, the defeat of their expectation that it would not. * * * Each landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes. He cannot evade this by any agreement with his neighbor, nor can his neighbor acquire a right from a private individual which imposes a new burden upon the public in the exercise of the right of eminent domain.''

The case was reviewed by the circuit court of appeals in *Wharton* v. *United States,* 153 Fed. 876, and was disposed of upon the ground that:

''The purpose of the United States in acquiring the property does not appear to be in any substantial particular inconsistent with the conditions of the deeds or destructive thereof.''

The court passed by the discussion of the district court upon the subject of public policy with the comment that the general outlook of conditions is in that direction, and also suggested that building restrictions are probably not true easements or hereditaments.

In *Doan* v. *Railway Co., supra,* the property was restricted to residence purposes. Defendants purchased some of the lots and proceeded to construct a four-track embankment 25 feet high on them. The gist of the decision was:

''If such restriction is not to be construed as preventing the use of the property for public purposes,

then of course there is no violation on the part of the defendant, and it follows that no recovery can be had. If, on the other hand, it is to be construed as prohibiting the use of the property for any purpose other than that of residences, it would prevent a public use of the lots and thereby defeat the right of eminent domain. No covenant in a deed restricting the real estate conveyed to certain uses and preventing other uses can operate to prevent the State, or any body politic or corporate having the authority to exercise the right of eminent domain, from devoting such property to a public use. The right of eminent domain rests upon public necessity, and a contract or covenant or plan of allotment which attempts to prevent the exercise of that right is clearly against public policy and is therefore illegal and void. Plaintiff's right to compensation, if it exists, must be based upon the restrictive covenant in the deeds and the general plan adopted. To give to plaintiff this right we would be compelled to recognize a right existing under what we hold to be an invalid restriction.''

We cannot approve the application made in these cases of the doctrine of public policy. The usual conveyance or contract affecting real estate contemplates its use by persons to the exclusion of all other persons and the public. In the right of use lies its value. The reasoning pursued, by reading the exclusive purpose out of the instrument as illegal, would read into it an exception of public use. In direct point, it would enable the State to destroy a common-law negative easement of light, air, and prospect without compensation. By analogy, it would deny payment for the destruction of an easement of way, an unexpired rental term, increased values due to attractive leases or uses, and, if pursued to its conclusion, injury to the residue of a

freehold when part is taken. All the authorities agree that these interests are compensable.

Especially as applied to residence restrictions is the syllogism unacceptable. Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate. This court has expressly recognized that the right of privacy for homes is a valuable right. *Signaigo* v. *Begun,* 234 Mich. 246. Of late, the executive and legislative branches of the government have declared the necessity for such restrictions through the enactment of zoning laws, an important purpose of which is to preserve to the home, home advantages, privacy, and atmosphere. The United States department of commerce has prepared a standard State zoning enabling act. The act has been adopted in whole or in part by 25 States; 18 others have enacted enabling laws; a total of 43 States have authorized cities to zone. In December, 1926, there were 456 zoned cities, with a population of about 30,000,000 people,—more than half the urban residents of the country. Baker on Legal Aspects of Zoning, 39. Michigan has an enabling act, Act No. 207, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 3480 [3] *et seq.*), and some 20 cities, with a population of over half a million, have adopted zoning ordinances. In the construction of contracts whose purpose has such definite approval of the State, the reading of illegality into them in aid of the power of eminent domain would not be justifiable.

Nor is there anything in our laws, system of government, or the spirit of our institutions which curtails the genius of a citizen in creating or enhancing values in his property in any lawful way, by physical improvement, psychological inducement, con-

tract, or otherwise. His obligation to recognize the power of eminent domain and the possibility of its exercise in nowise restricts his right to legitimate profit. He may view the power in its constitutional entirety, with its comitant requisite of just compensation, and order his affairs within the law with assurance that if the State takes his property, it will pay him the value of what it takes, of whatever that value may consist, so it is measured by the market. Anything less is confiscation.

The position of this court in *Allen* v. *City of Detroit, supra,* is supported by *Hayes* v. *Railroad Co.,* 51 N. J. Eq. 345 (27 Atl. 648), involving the building of a railroad embankment contrary to restrictions, which, however, permitted a railroad on the level of the street; *Flynn* v. *Railway Co.,* 218 N. Y. 140 (112 N. E. 913, Ann. Cas. 1918B, 588), covering the construction of a railroad track, partly on an embankment and partly in an open cut, in a district restricted exclusively to residences; *Peters* v. *Buckner,* 288 Mo. 618 (232 S. W. 1024, 17 A. L. R. 543), where land, restricted to residence purposes, was taken for a schoolhouse; and *Ladd* v. *City of Boston,* 151 Mass. 585 (24 N. E. 858, 21 Am. St. Rep. 481), in which the court held that setback restrictions constituted an easement of light, air, and prospect, and found plaintiff entitled to damages for destruction of such easement by the erection of a court house, although no part of his land was actually taken. The basis of these decisions was that the owner of each lot in a restricted district has an interest in each other lot and the taking of such other lot for public use is a taking of his interest therein, for which he is entitled to compensation under the Constitution.

There can be no doubt that, if plaintiffs have property interests in the lots purchased or con-

demned by the State, the use of such lots for purposes in violation of the restrictions would work destruction of those interests and be a taking of property in the constitutional sense. So the basic question in the case is whether plaintiffs have such interest.

In England, building restrictions are apparently regarded as contractual and are enforced in chancery upon the principle that it would be inequitable to permit violation of mutual covenants. *Catt* v. *Tourle,* 4 Ch. App. Cas. 654. But see *Long Eaton Recreation Grounds Co.* v. *Railway Co.,* 49 L. R. (K. B.) 574, in which the court held that destruction of the restriction injuriously affects the land to which it is attached and gives right to damages under the lands clauses act; and opinion of Mathew, L. J., in which he designated the restriction a negative easement.

New Jersey has approved the contractual view, *DeGray* v. *Club House Co.,* 50 N. J. Eq. 329 (24 Atl. 388), and, to the contrary, has held that the restriction "is a right of amenity in the land * * * in the nature of an easement or servitude appurtenant to the remaining land," for the destruction of which for public use, compensation must be made. *Hayes* v. *Railroad Co., supra; Herr* v. *Board of Education,* 82 N. J. Law, 610 (83 Atl. 173); *Lamonte* v. *Orlando,* 97 N. J. Eq. 425 (129 Atl. 442).

Rhode Island holds the instrument creating restrictions a grant in fee to each owner of a negative easement in all the other lands, capable of enforcement both in equity and at law. *Greene* v. *Creighton,* 7 R. I. 1.

Missouri has also identified the interest as an easement. *Peters* v. *Buckner, supra.*

In *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242 (117 N. E. 244, L. R. A. 1918B, 55), after reviewing earlier cases, the court said:

"It is a necessary corollary of these decisions defining the nature of equitable restrictions that they are real estate. They are part and parcel of the land to which they are attached and with which they pass by conveyance."

Other courts have designated the right created by building restrictions as a negative easement, reciprocal negative easement, property right, equitable interest in the nature of, or analogous to, an easement or negative easement, and otherwise. Whatever the name, all American authorities we have been able to discover, which have attempted definite statement of the effect of building restrictions adopted in furtherance of a general plan, hold that they constitute equitable interests or property rights in each lot for the benefit of and appurtenant to each other lot covered by the same restrictions, at least when the instrument creating them evidences the purpose that they shall run with the land and not be purely personal. The following citations are indicative of the jurisdictions which have so held; but are not exhaustive of the cases therein: *Webb* v. *Robbins,* 77 Ala. 176; *Strong* v. *Hancock,* 201 Cal. 530 (258 Pac. 60); *Baker* v. *Lunde,* 96 Conn. 530 (114 Atl. 673); *Clem* v. *Valentine* (Md.), 141 Atl. 710; *Tinker* v. *Forbes,* 136 Ill. 221 (26 N. E. 503); *Clark* v. *McGee,* 159 Ill. 518 (42 N. E. 965); *Chapin* v. *Dougherty,* 165 Ill. App. 426; *Whitney* v. *Railway Co.,* 11 Gray (Mass.), 359 (71 Am. Dec. 715); *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242 (117 N. E. 244, L. R. A. 1918B, 55); *Bolin* v. *Investment Co.,* 273 Mo. 257 (200 S. W. 1059, L. R. A. 1918C, 869); *Trustees of Columbia College*

v. *Lynch,* 70 N. Y. 440 (26 Am. Rep. 615) ; *Raynor* v. *Lyon,* 46 Hun (N. Y.), 227 (11 N. Y. St. Rep. 500) ; *Hart* v. *Little,* 171 N. Y. Supp. 6 ; *Ludgate* v. *Somerville,* 121 Or. 643 (256 Pac. 1043, 54 A. L. R. 837) ; *Muzzarelli* v. *Hulshizer,* 163 Pa. 643 (30 Atl. 291) ; *Fuller* v. *Arms,* 45 Vt. 400 ; *Hennen* v. *Deveny,* 71 W. Va. 629 (77 S. E. 142, L. R. A. 1917A, 524). See, also, Gale on Easements (10th Ed.), 30 ; 4 Thompson on Real Property, 524-526 ; 37 L. R. A. (N. S.) 36, and note ; 21 A. L. R. 1324 ; *Boyden* v. *Roberts,* 131 Wis. 659 (111 N. W. 701) ; *Kettle River R. Co.* v. *Eastern R. Co.,* 41 Minn. 461 (43 N. W. 469, 6 L. R. A. 111) ; *Simpson* v. *Mikkelsen,* 196 Ill. 575 (63 N. E. 1036) ; *Fisher* v. *Beard,* 32 Iowa, 346.

As further indication of their character, the courts are in harmony that building restrictions unknown to the purchaser constitute breach of covenant against incumbrances. 4 Thompson on Real Property, 617 ; Maupin on Marketable Title to Real Estate, 301 ; 15 C. J. p. 1277 ; *Williams* v. *Hewitt,* 57 Wash. 62 (106 Pac. 496). And in *Sprague* v. *Kimball,* 213 Mass. 380 (100 N. E. 622, 45 L. R. A. [N. S.] 962, Ann. Cas. 1914A, 431), it was held that a building restriction is within a statute of frauds requiring conveyance of equitable as well as of legal interests in land to be evidenced by written instruments.

There will also be found running through some of the cases the thread of a distinction between the contractual nature of the covenant and its effect as a conveyance of an equitable interest in real estate. This distinction chiefly concerns the right of action at law for damages or breach of covenant.

The position of this court on the effect of a building restriction, originally taken before the subdivision at bar was platted, has been uniform. *Misch*

v. *Lehman,* 178 Mich. 225; *McQuade* v. *Wilcox,* 215
Mich. 302 (16 A. L. R. 997); *Harley* v. *Zack,* 217
Mich. 549; *Signaigo* v. *Begun,* 234 Mich. 246.

In *Sanborn* v. *McLean,* 233 Mich. 227, Mr. Justice
Wiest denoted its characteristics:

"It runs with the land sold by virtue of express
fastening and abides with the land retained until
loosened by expiration of its period of service or
by events working its destruction. It is not personal
to owners but operative upon use of the land by any
owner having actual or constructive notice thereof.
It is an easement passing its benefits and carrying
its obligations to all purchasers of land subject to
its affirmative or negative mandates. It originates
for mutual benefit and exists with vigor sufficient to
work its ends."

It is doubtless true that building restrictions did
not constitute easements known to the common law.
The house of lords, however, has stated that the
category of easements must expand with the cir-
cumstances of mankind. Gale on Easements, 20. A
restriction of the use of premises exclusively for
residences, especially if with setback requirements,
is not foreign to the principle of common-law nega-
tive easement of air, light, and view. As the right
to restrict the use of real estate is an invasion of
ownership, it would seem logical that it is done by
virtue of a right or interest in such real estate.
Holding it an easement is no more than a fair ex-
pansion of the category of easements. However, a
right in the nature of an easement need not have
been known to the common law as an easement in
order to carry compensation for its destruction.
The so-called easement of light, air, and access in
property abutting on a public street is not a com-
mon-law easement, but its impairment by public use

in the street is a taking of property. *In re Forty-Second Street Spur of the Manhattan R. Co.,* 216 N. Y. Supp. 2. See, also, *Ranson* v. *City of Sault Ste. Marie,* 143 Mich. 661 (15 L. R. A. [N. S.] 49).

No good cause appears for overruling *Allen* v. *City of Detroit, supra.* The rule there announced is a settled property law of the State, is supported by the weight of authority, and is founded upon principles approved by the practically unanimous judicial opinion of the country. If there is danger that the rule may have the untoward consequences upon future public improvements prophesied by counsel, judicious legislation can both guard against evils and maintain the just rights of property owners.

The rules for admeasurement of compensation for destruction of restrictive covenants in property taken for public use appear to have been considered in only two States.

In New Jersey the rule seems to be that the measure of compensation is the value of the servitude without regard to the effect of its destruction on other lots. Apparently only nominal damages are recoverable unless the servitude decreases the value of the land physically taken, in which case the decrease would measure the value of all outstanding easements. *Herr* v. *Board of Education, supra; Hayes* v. *Railroad Co., supra.*

In *Flynn* v. *Railway Co., supra,* the New York court said:

"These restrictive covenants create a property right and make direct and compensational the damages which otherwise would be consequential and non-compensational. * * * The right of the property owner is measured by the depreciation in value which his land sustains, including such depreciation as will be sustained by reason of the use to which

the railroad puts its property, the difference in value between his land with and without the railroad in operation.''

This disagreement induces further general inquiry into the subject.

While the condemnation proceedings at bar are conducted by the State under the highway law (Act No. 352, Pub. Acts 1925; Act No. 340, Pub. Acts 1927), in *Fitzsimons & Galvin* v. *Rogers, supra,* Mr. Justice North pointed out that:

''In the present case, as in an ordinary proceeding for condemning a right of way for a railroad, it will be the duty of the commissioners 'to compensate the owner for what his landed interest will suffer from the use proposed to be made of it by the railroad company.' *Barnes* v. *Railway Co.,* 65 Mich. 251.''

It is the rule that where the whole of land is taken, the compensation to be made is the fair value of the land. Where only part of a parcel is taken, just compensation is not measured by proportionate acreage but by the amount to which the value of the property from which it is taken is diminished. *Grand Rapids, etc., R. Co.* v. *Heisel,* 47 Mich. 393. The value of the part actually taken is allowed as direct compensation; but the decreased value of the residue of the parcel, on account of the use made of the land taken, is also allowable as compensation even though it is strictly consequential damage in nature. *Sharpe* v. *United States,* 191 U. S. 341 (24 Sup. Ct. 114); 2 Nichols on Eminent Domain (2d Ed.), § 236.

The effect of the application of these rules is that the diminution in value of plaintiffs' premises, as a result of the destruction of the restrictions, would

be the measure of compensation because restrictive covenants constitute an interest in the land taken, part of and appurtenant to such premises. See *South Buffalo R. Co.* v. *Kirkover*, 176 N. Y. 301 (68 N. E. 366).

In *Newman* v. *Railway Co.*, 118 N. Y. 618 (23 N. E. 187, 7 L. R. A. 289), where so-called easements of access, light, and air were impaired by the construction of an elevated railway in the public street, no part of plaintiffs' premises having been actually taken, the court said:

"The easement is the property taken by the railroad company. But in estimating its value it is impossible to consider it as a piece of property, separate and distinct from the land to which it is appurtenant, and the right of the owner to compensation is measured, not by the value of the easement in the street separate from his abutting property, but by the damages which the abutting property sustains as a result or consequence of the loss of the easement."

In *Bohm* v. *Railway Co.*, 129 N. Y. 576 (29 N. E. 802, 14 L. R. A. 344), the court stated the obvious in remarking that easements have no value of themselves and the real and only damage is consequential, the effect produced on land to which they are appurtenant.

This is also the rule for destruction of common-law easements, the analogy of which to the interests at bar is clear.

In *United States* v. *Welch*, 217 U. S. 333 (30 Sup. Ct. 527, 28 L. R. A. [N. S.] 385, 19 Ann. Cas. 680), the government permanently flooded a three-acre strip contiguous to other land of plaintiffs. The latter had a right of way over other lands of different ownership to a county road. The flooding of

the strip destroyed access to the right of way.  The court held them entitled to compensation, not only for the three acres flooded, but also for the diminished value of their other land caused by the destruction of their use of the right of way, saying:

"A private right of way is an easement and is land.  We perceive no reason why it should not be held to be acquired by the United States as incident to the fee for which it admits that it must pay.  But if it were only destroyed and ended, a destruction for public purposes may as well be a taking as would be an appropriation for the same end.  *Miller* v. *Horton,* 152 Mass. 540, 547 (26 N. E. 100, 10 L. R. A. 116, 23 Am. St. Rep. 850).  The same reasoning that allows a recovery for the taking of land by permanent occupation allows it for a right of way taken in the same manner, and the value of the easement cannot be ascertained without reference to the dominant estate to which it was attached."

Under the highway act, benefits are considered in determining the amount of compensation.  Under the railroad act, they are not.  This distinction is of importance only where real estate is physically taken.  In determining plaintiffs' compensation, the benefits to their property, if any, arising from the construction and operation of the railroad, are proper to be considered, not upon the theory that benefits may be deducted from damages, but in ascertaining how much, if any, plaintiffs' property has been actually reduced in value.  *Newman* v. *Railway Co., supra; Page* v. *Railway Co.,* 70 Ill. 324.

The claim of counsel for defendants that the destruction of the easements at bar is by virtue of police power and not under the power of eminent domain is answered by *Allen* v. *City of Detroit, supra.*  Their contention that there is a difference

in the character and effect of the power of eminent domain when exercised by the State than when used by municipality is not tenable. It is the same attribute of sovereignty, whatever the agency through which it is exercised. The authorities to the effect that a change of grade in a highway, when authorized by the legislature, or in a railroad, is not a taking of property of abutting owners, within the meaning of the Constitution, as damages to such property therefrom are purely consequential, are not applicable. Plaintiffs are not merely abutting owners. Their right to damages rests upon the physical taking, by destruction, of their negative easements in land actually taken and the injury to other land is compensable only because such easements are appurtenant to and part of such other land. Defendant railway company's argument that the restrictions at bar are not subsisting because taking of land for railroad purposes changes the character of the neighborhood is sufficiently met by the suggestion that the change cannot so occur until after plaintiffs' property has been taken. The other contentions of defendants have been fully covered or are specifically answered by the above authorities.

It is therefore held that owners of property in a subdivision in which, under a general plan, the property is restricted to specified uses, and in which the restrictions are valid, subsisting, and enforceable against the lands in the hands of private owners, are entitled to compensation upon the taking of any part of such subdivision for public use in violation of such restrictions; that, aside from nominal damages for destruction of the easement, the compensation is measured by the actual diminution in value of the premises of such owner as a result of the use to which the property taken is put; and that, in de-

termining such diminution, the effect, by way of benefit as well as by way of injury, of such use is to be taken into account.

Since the above was written, attention has been called to *Town of Stamford* v. *Vuono* (Conn.), 143 Atl. 245, recently decided. The restrictions were to residence purposes. The proceedings were condemnation for a high school. The court refused to follow *United States* v. *Certain Lands* and *Doan* v. *Railway Co., supra,* and, in discussing the contention that restrictions are against public policy so far as they prohibit public buildings upon restricted property, said:

"The argument in support of this contention is that no contractual agreement between the owners of property should be permitted to prevent the use of that property by an agency of the State when its use is required in the exercise of a governmental function, that to require the State to make compensation for the right taken would interfere with this governmental function, and therefore should not be permitted. The fallacy of the argument lies in the assumption of its minor premise that the requirement that the State compensate the owner of the dominant tenement for the taking of his interest in the servient tenement actually interferes with the exercise of any governmental function. There is, of course, a clear distinction between the rights of the private owner of land which is subject to a restrictive easement and those of a governmental agency which requires for public purposes the use of the land in violation of the restriction. The private owner may not violate the restriction; if he attempts to do so, he may be restrained by injunction. The governmental agency may not be restrained from making such use of the property as the public purpose for which it is acquired may require, but, if that involves the taking of private property, it must

make compensation for the same. When, therefore, property subject to a restrictive easement is taken for a public use, it has been held that the owner of the property for whose benefit the restriction is imposed is entitled to compensation.''

The court further declared:

''Such restrictions are in the nature of an easement constituting an interest in the land upon which they are imposed.''

And, in holding defendant entitled to compensation for the taking of her equitable easements, stated the rule of damages:

''The just compensation to which the property owner is entitled when his land is taken is ordinarily measured by the market value of the land taken. When an easement appurtenant to land is taken, the measure of damages is the depreciation in the market value of the dominant tenement. *Neff* v. *Railroad Co.*, 202 Pa. 371 (51 Atl. 1038). This is shown by the difference in the fair market value of the property before and after the taking.''

The conclusions of the circuit court upon the law are affirmed. We also agree with its view that the remedy should restrain violation of the restrictions until the plaintiffs have released them or condemnation proceedings have proceeded to the point where they are assured of compensation. We think, however, that this may be done without the necessity of requiring the State to negotiate for releases, both because it is obvious such negotiations would be futile and because specific performance of building restrictions by injunction is not a matter of absolute legal right, but is governed by equitable considerations. *Baxter* v. *Ogooshevitz*, 205 Mich. 249. The condemnation proceedings now pending afford plain-

tiffs ample opportunity for full compensation for injury to their property on account of destruction of their restrictions. An important and desirable public improvement is being delayed with inconvenience to the public and great cost to defendants.

Section 4, Act No. 92, Pub. Acts 1927, provides for determination by the State highway commissioner of the damages which should be paid as compensation for the taking of each parcel of property. This determination with payment, tender, or deposit of the award for the benefit of the owner is the basis for the State's taking possession. Subsequent proceedings for final appraisal of compensation by commissioners appointed by a court follow in due course. The determination by the State highway commissioner will so establish the condemnation proceedings as to insure plaintiffs and all others similarly situated an opportunity to obtain adequate compensation. The decree will be modified to restrain destruction of plaintiffs' restrictive easements until the State highway commissioner has made such determination and payment, tender, or deposit. The statutory notice of the proceedings for such determination should be served on all persons interested in the subdivision as provided by statute, and any others claiming interests will have an opportunity to intervene in the proceedings at any proper stage for the protection of their rights.

The decree will be modified in accordance with this opinion, without costs.

North, Fellows, Wiest, Clark, McDonald, and Sharpe, JJ., concurred. Potter, J., did not sit.